# JACOBS *v.* BEECHAM.

## APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE SECOND CIRCUIT.

No. 139.   Argued April 21, 24, 1911.—Decided May 15, 1911.

*Corruptio optimi pessima.*   Sound general principles should not be turned to support a conclusion manifestly improper.

Even if the burden of proof is on one manufacturing a named article under a secret formula to prove that one selling an article by the same name is not manufacturing under that formula, there is a *prima facie* presumption of difference, which protects the owner without requiring him to give up the secret.

The burden is on a defendant who uses plaintiff's trade-name to justify the using thereof.

Where the name of the originator has not left him to travel with the goods the name remains with the manufacturer, as an expression of source and not of character.

The word "Beecham's" as used in connection with pills manufactured by the party of that name is not generic as to the article manufactured but individual as to the producer; and one calling his product by the same name is guilty of unfair trade even if he states that he, and not Beecham, makes them.

The word "patent" as used in connection with medicines does not mean that the article is patented but that it is proprietary; and there is no fraud on the public in using the word in that sense although the article has not been patented.

The proprietor of a valuable article will not be deprived of protection against unfair trade because of certain trivial misstatements as to place of manufacture and Christian name of manufacturer when both statements were true at one time and it does not appear that the public have been improperly misled.

159 Fed. Rep. 129, affirmed.

The facts are stated in the opinion.

*Mr. George F. Hurd* and *Mr. Cornelius W. Wickersham* (by leave of the court), with whom *Mr. Max J. Kohler,*

Mr. *Moses Weill* and *Mr. Isaac Weill* were on the brief, for appellants:

The right to use the name of Beecham is *publici juris*, and defendant is not guilty of unfair competition. Appellee has no trade-mark. There can be no trade-mark in a proper name. *Canal Co.* v. *Clark*, 13 Wall. 311; *Brown Chemical Co.* v. *Meyer*, 139 U. S. 540; *Corbin* v. *Gould*, 133 U. S. 308; *LeClanche Battery Co.* v. *Western Elec. Co.*, 23 Fed. Rep. 276; Hopkins on Trade-marks, 2d ed., §§ 40, 53.

No unfair competition has been shown. There is no evidence that defendant's pills were inferior or dissimilar to complainant's. The burden of proving such inferiority or dissimilarity, had it existed, was on complainant-appellee, and in the absence of evidence thereon an injunction granted upon that ground would be unwarranted. *Baglin* v. *Cusenier Co.*, 164 Fed. Rep. 25 (the *Chartreuse case*); *Hostetter Co.* v. *Comerford*, 97 Fed. Rep. 585; *Goodyear's &c. Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598, 604; *LaMont* v. *Leedy*, 88 Fed. Rep. 72.

Appellant has not used the name "Beecham" in any manner whatever calculated to deceive the public into a belief that the goods offered for sale by him are those of the appellee. He sold pills designated as Beecham Pills, manufactured by Mark Jacobs, Maspeth, L. I., N. Y., U. S. A.

If a secret process is unpatented anyone may use it and enter into competition with the original discoverer. *Canham* v. *Jones*, 2 Vesey & B. 218; *Saxlehner* v. *Wagner*, 216 U. S. 375; *Chadwick* v. *Covell*, 151 Massachusetts, 190; *Watkins* v. *Landon*, 52 Minnesota, 389.

This principle is also upheld in *Marshall* v. *Pinkham*, 52 Wisconsin, 572; *Park & Sons Co.* v. *Hartman*, 153 Fed. Rep. 24, 29, 32, 33; *Singleton* v. *Bolton*, 3 Douglas, 293; *Canham* v. *Jones*, 2 Vesey & B. 218; *Burgess* v. *Burgess*, 17 Eng. L. & E. 257; *James* v. *James*, L. R. 13 Eq. Cas. 421; *Massam* v. *Thorley's C. F. Co.*, 6 Ch. Div. 574; and

see where the secret process or formula was originally protected by letters patent, but the patent has expired, *Singer Company* v. *June*, 163 U. S. 169, 185.

The only distinction between the cases where no patent ever existed and where a patent has expired, is in the method by which the right is obtained—in the one case by dedication, and in the other by the acquisition of knowledge of the secret. The resulting right is the same, as was intimated by this court in the *Hunyadi Case*, 216 U. S. 381. *Fowle* v. *Park*, 131 U. S. 88, is distinguishable.

Complainant has no exclusive right to the manufacture and sale of these pills, nor to the use of the word "Beecham" in connection therewith; that word being generic and the only designation of the product, is open to use by anyone who actually engages in the business of manufacturing and selling this commodity, care being taken to state by whom it is in fact manufactured. The false use of the word "patent" disentitles complainant to equitable relief. *Holzapfel's* v. *Rahtjen's Co.*, 183 U. S. 1; *Oliphant* v. *Salem Flouring Mills*, 5 Sawyer, 128; *Consolidated* v. *Dorflinger*, Fed. Cas. No. 3129; *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, 11 H. L. Cas. 523; *Worden* v. *California Fig Syrup Co.*, 187 U. S. 516.

Cases cited in 28 Am. & Eng. Ency. of Law, 356, and *Solez Cigar Co.* v. *Pozo*, 16 Colorado, 388; *Ford* v. *Foster*, L. R. 7 Ch. Div. 611, relate only to where there was a patent which had expired; but see *Cheavin* v. *Walker*, 5 Ch. Div. 850; *Preservaline Mfg. Co.* v. *Heller Chemical Co.*, 118 Fed. Rep. 103; and § 4901, Rev. Stat. The English courts have established a similar doctrine.

In the case at bar, complainant relied on a secret process, and defendant used the name given to the article by the discoverer of the invention, adding, however, that it was manufactured by themselves. *Cheavin* v. *Walker*, 5 Ch. Div. 850; *Pharmaceutical Society* v. *Piper*, 1893, L. R. 1 Q. B. 686; Fulton on Patents, Trade-marks and

Designs (London, 1902), 188; *Consolidated* v. *Dorflinger*, Fed. Cas. No. 3129.

Complainant has been guilty of deceiving the public, and he now attempts to wash the stain of unconscionable conduct from his hands by a denial of misrepresentation. The case is unlike that of patent leather shoes, because the word "patent" as used by him is not descriptive.

The misrepresentation of manufacture in England, and the continued use of the name Thomas Beecham disentitle complainant to equitable relief. A complainant who has deceived the public by a false statement in regard to' the place of manufacture of his commodity is not entitled to relief in equity. *Manhattan Medicine Co.* v. *Wood*, 108 U. S. 218, 222; *Worden* v. *California Fig Syrup Co.*, *supra*, at 528; *Palmer* v. *Harris*, 60 Pa. 156.

There is certainly enough in Joseph Beecham's labels to convey to everyone who can read that the pills are still made in England, where the business was solely conducted until about 1890, particularly in view of the express statements on circulars used for years thereafter that the pills were prepared in that country. *Saunion & Co.*, Cox's Manual, case 625; Browne on Trade-marks, 2d ed., § 71, p. 78; *Solez Cigar Co.* v. *Pozo & Suarez*, 16 Colorado, 388, 394; *Wrisley* v. *Iowa Soap Co.*, 104 Fed. Rep. 548. See also *Kenny* v. *Gillet*, 70 Maryland, 574; *Prince M. Co.* v. *Prince's Metallic Paint Co.*, 135 N. Y. 24; *Hobbs* v. *Francis*, 19 How. Pr. (N. Y.) 567; *Millrae Co.* v. *Taylor*, 37 Pac. Rep. 235 (Cal.); *Coleman Co.* v. *Dannenberg Co.*, 103 Georgia, 784; *Raymond* v. *Royal Baking Powder Co.*, 85 Fed. Rep. 231.

Complainant's failure to state in his labels the change of manufacture after the assignment from Thomas Beecham is another element of his inequitable conduct.

The continued use of the name of Thomas Beecham by complainant should, therefore, disentitle him to the relief

sought.  Paul on Trade-marks, § 318, p. 543; *Stachelberg* v. *Ponce*, 23 Fed. Rep. 430 (affirmed on other grounds, 128 U. S. 686); *Symonds* v. *Jones*, 82 Maine, 302, 315; *Hegeman & Co.* v. *Hegeman*, 8 Daly (N. Y.), 1, 22; *Royal Baking Powder Co.* v. *Raymond*, 70 Fed. Rep. 376; *S. C.*, aff'd 85 Fed. Rep. 231.  See also *Seigert* v. *Abbott*, 61 Maryland, 276; *Alaska Packer's Assn.* v. *Alaska Imp. Co.*, 60 Fed. Rep. 103 (even where labels corrected after suit brought).

The court has jurisdiction of the case at bar under § 6 of the act of March 3, 1891.

*Mr. John L. Wilkie* for appellee.

The appellee has not represented that his pills are manufactured under letters patent by using the words "Patent Pills."

As to cases where the word "patent" was held not to indicate and did not in fact indicate that the article to which it was applied was in fact patented, see *Cahn* v. *Gottschalk*, 14 Daly, 542; *Cochrane* v. *McNish*, 1896, App. Cas. 225; *Marshall* v. *Ross*, L. R. 8 Eq. 651; *Stewart* v. *Smithson*, 1 Hilton, 119; *Leather Cloth Co.* v. *Am. Leather Cloth Co.*, 11 H. L. 523; *Ins. Oil Tank Co.* v. *Scott*, 33 La. Ann. 946.

The word "patent" is frequently used in combinations not intended to indicate that the article has been in fact patented.  See Century Dictionary; Murray's Oxford Dictionary; Encyclopædic Dictionary; Stormonth's Dictionary; Brewer's Etymological and Pronouncing Dictionary of Difficult Words.

In many statutes in this country the word "patent" as applied to medicines is used as interchangeable with "proprietary," and such use of the word has, therefore, obtained a legislative sanction.  The citations are so numerous that they can at best be merely classified.

In the following statutes the phrase "patent or proprietary medicines" occurs in provisions regulating their

preparation and sale: Rev. Stat., § 3436; Arkansas Dig. of Statutes, § 5283; Dakota Territory Rev Stat., §§ 228, 229; Hawaii Territory Rev. Stat., § 1095; Illinois Rev. Stat., c. 91, § 30; Indiana Rev. Stat., § 5000*i;* Maine Rev. Stat., c. 30, § 13; Michigan Rev. Laws, § 5312; New Jersey Public Laws, 1895, p. 365, § 8; North Dakota Rev. Stat.; § 7281; Ohio Rev. Stat., § 4405; Tennessee Code, § 3635; Vermont Rev. Stat., § 4663; Washington Codes and Statutes, § 2877; Wyoming Rev. Stat., § 2222.

In the following three statutes the phrase is "proprietary and patent medicines." Colorado Rev. Stat., § 4909; Florida Rev. Stat., § 814; Oregon Codes and Statutes, § 3811. See also Massachusetts Rev. Stat., c. 76, § 23; Utah Rev. Stat., § 1725; Kentucky Rev. Stat., § 2631; Delaware, c. 36, Vol. 18, § 1; South Carolina Civil Code, § 1126; Louisiana Laws of 1888, act 66, p. 74, § 3; Pennsylvania Public Laws, 189, § 6 (1887, May 24); Rhode Island Rev. Stat., c. 152, § 8; South Dakota Political Code, § 281; West Virginia Code, c. 150, § 7.

For legal construction see *State* v. *Donaldson*, 41 Minnesota, 74; *Nordyke* v. *Kehlor*, 155 Missouri, 643, 653; *Palmer* v. *McCormick*, 30 Fed. Rep. 82.

The appellee has not been guilty of any false representations either as to the place of manufacture of his product or the person by whom the same is manufactured.

Even if a statement as to place of manufacture were misleading, it has been abandoned for seventeen years and cannot be made the basis of successful piracy of the name "Beecham." The discontinuance of a misstatement when made before suit brought relieves the complainant of the effect of the rule. *Moxie Nerve & Food Co.* v. *Modox Co.*, 153 Fed. Rep. 487; *Johnson & Johnson* v. *Sedbury & Johnson* (N. J.), 67 Atl. Rep. 36; *Symonds* v. *Jones*, 82 Maine, 302.

As to the alleged misstatement that the pills are prepared only and sold wholesale by the proprietor, Thomas

Beecham, Lancashire, England, all of the forms used since 1902 are necessarily objectionable and under the authorities cited appellant cannot rake up the past to find in a long discontinued user, evidence of untrue statements. See *"Moxie"* and other cases, *supra.*

Also the alleged misstatement is that the pills are specially packed for the United States of America, being covered with a quickly soluble, pleasant coating, completely disguising the taste of the pill. This was used while the pills were both packed and made in the United States, and the whole question is whether or not the clause is false, not by virtue of what it says, but of what it suggests. *Wrisley Co.* v. *Iowa Soap Co.,* 104 Fed. Rep. 548, does not apply. The words here do not call for the interpretation that the pills are made in England, although packed for the United States. They are equally true wherever the pills are made. See *Tarrant & Co.* v. *Johann Hoff,* 76 Fed. Rep. 959; *Clark Thread Co.* v. *Armitage,* 74 Fed. Rep. 936; *Société Anonyme* v. *Western Distilling Co.,* 43 Fed. Rep. 416; *Siegert* v. *Gandolfi,* 149 Fed. Rep. 100; *Gluckman* v. *Strauch,* 99 App. Div. 361; aff'd 186 N. Y. 560.

As to alleged misrepresentations as to the persons by whom the pills are manufactured, there was no misrepresentation. *Manhattan Medicine Co.* v. *Wood,* 108 U. S. 218.

The real proprietor of the trade-name used in connection with these pills has never been the person of Thomas' Beecham as distinguished from Joseph, or any other person, but has always been and is "Thomas Beecham of St. Helens, England," a partnership formerly composed of both Thomas and Joseph to which the latter succeeded as sole surviving partner. The appellee is lawfully continuing the business under the old name, as he has done since 1895, and the statement that the pills were manufactured and sold "by the proprietor Thomas Beecham, St. Helens, England," was strictly speaking as accurate

in point of fact after the transfer of 1895 as it was before. It cannot be regarded as a misrepresentation or a fraudulent statement.

The appellee is not barred from relief because his pills happen to be made under a secret process or formula. The rule that an owner of a secret process, unpatented, may not enjoin another from manufacturing goods under that process and marketing them under the name used to describe them by the original manufacturer, and by which they have come to be known to the public, provided the latter comes to his knowledge of the process in good faith has no application to this case.

Appellee's right to relief does not depend in any way upon the fact of his goods being manufactured under a secret process. His right to relief depends simply upon the fact of the appellant's manufacturing and selling similar goods, calling them by his trade-name.

There is no less right on the part of a manufacturer of goods made under a secret process or formula to protection of his trade-name than on the part of an ordinary manufacturer of goods.

The rule is not that the owner of a valuable trade-name cannot enjoin the manufacturer of similar goods under the same name unless he can show that such goods are manufactured under a secret process other than that used by himself, but rather that he can enjoin such use of his trade-name unless the person attempting to use the same can justify his attempted use by showing similarity of secret process and good faith in the acquisition of knowledge as to the same.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is a bill by the owner of a proprietary or patent medicine, so called, made according to a secret formula and known as Beecham's Pills, to restrain the defendant

from using the same name on pills made by him, and trying to appropriate the plaintiff's good will. The plaintiff had a decree in the Circuit Court enjoining the defendant from using the word Beecham in connection with pills prepared or sold by him, which decree was affirmed by the Circuit Court of Appeals. 159 Fed. Rep. 129. 86 C. C. A. 623.

The present appeal is based on two or three different grounds. The first of these is that anyone who honestly can discover the formula has a right to use it, to tell the public that he is using it, and for that purpose to employ the only words by which the formula can be identified to the public mind. As to the defendant's having discovered the formula, it is said that if he makes a different or inferior article the burden is on the plaintiff to prove the fact. As to the method adopted by the defendant to advertise his wares, which, apart from other imitations, consists in simply marking them Beecham's Pills, it is said that the proper name cannot constitute a trade-mark and has become the generic designation of the thing. The defendant's use of the name is said to be saved from being unfair by the statement underneath that he made the pills.

*Corruptio optimi pessima.* Sound general propositions thus are turned to the support of a conclusion that manifestly should not be reached. We will follow and answer the argument in the order in which we have stated it. If, in a technical sense, the burden of proof is on the plaintiffs to prove that the defendant's pills are not made by his formula, there is at least a *prima facie* presumption of difference, just as in the case of slander there is a presumption that slanderous words are false. A different rule would prevent the owner of a secret process from protecting it except by giving up his secret. Again, when the defendant has to justify using the plaintiff's trade-name, the burden is on him. Finally, as the case presents what is a fraud on its face, it is more likely that the defendant is

a modern advertiser.than that he has discovered the hidden formula of the plaintiff's success.

As to the defendant's method of advertising, he does not simply say that he has the Beecham formula, as in *Saxlehner* v. *Wagner*, 216 U. S. 375, but he says that he makes Beecham's Pills. The only sense in which Beecham's Pills can be said to have become a designation of the article is that Beecham, so far as appears, is the only man who has made it. But there is nothing generic in the designation. It is in the highest degree individual and means the producer as much as the product. It has not left the originator, to travel with the goods, as in *Chadwick* v. *Covell*, 151 Massachusetts,.190, 195, or come to express character rather than source, as it is admitted sometimes may be the case. *Holzapfel's Compositions Co.* v. *Rahtjen's American Composition Co.*, 183 U. S. 1. *Goodyear's India Rubber Glove Manuf. Co.* v. *Goodyear Rubber Co.*, 128 U. S. 598. *Thomson* v. *Winchester*, 19 Pick. 214, 216. To call pills Beecham's Pills is to call them the plaintiff's pills. The statement that the defendant makes them does not save the fraud. That is not what the public would notice or is intended to notice, and, if it did, its natural interpretation would be that the defendant had bought the original business out and was carrying it on. It would be unfair, even if we could assume, as we cannot, that the defendant uses the plaintiff's formula for his pills. *McLean* v. *Fleming*, 96 U. S. 245, 252. *Millington* v. *Fox*, 3 My. & Cr. 338, 352. *Gilman* v. *Hunnewell*, 122 Massachusetts, 139, 148.

The other grounds of appeal are charges that the plaintiff's boxes have upon them false statements such as to exclude him from equitable relief. The one most pressed is that certain of the boxes carry the words Beecham's Patent Pills, and that the pills are not patented. The answer is that the word does not convey the notion that they are. To signify that, the proper word is 'patented'

rather than 'patent,' and it commonly is used separately, not prefixed to a noun. On the other hand, the use of the word patent to indicate medicines made by secret formulas is widespread and well known. It is mentioned in the dictionaries, and it occurs in the plaintiff's circulars. We think it clear that there is no danger that anyone would be defrauded by the form of the label on the plaintiff's box, and that it would be wrong to press *Holzapfel's Compositions Co.* v. *Rahtjen's American Composition Co.*, 183 U. S. 1, so far as to cover this case.

It is objected further that the plaintiff's boxes are labelled "Beecham's Patent Pills, price 25 cents, sold by the Proprietor, St. Helens, Lancashire, England," or "Beecham's Patent Pills, St. Helens, Lancashire," or "Beecham's Pills, Saint Helens," and that a circular contains the statement that "The pills accompanying this pamphlet are specially packed for U. S. America, being covered with a quickly soluble pleasant coating" &c. The statement in the circular is true in a literal sense, but suggests the belief that the pills were made in England whereas in fact they now are made in New York. The labels may be said to convey a similar suggestion in a fainter form. With this may be mentioned the remaining object of cavil, that some of the boxes still bear the name of Thomas Beecham, although Thomas Beecham transferred his interest to the plaintiff, his son, in 1895. Both of these matters are small survivals from a time when they were literally true and are far too insignificant when taken with the total character of the plaintiff's advertising to leave him a defenceless prey to the world. The facts are that the business was started by Thomas Beecham, in England, that he made the pills there and got a considerable custom in America, that he took the plaintiff into partnership, continuing the business under the old name, and that in 1895 he retired, turning over his interest to his son. The son went on under the same name for a time, but his boxes now bear his

own name as proprietor, and his circulars show that he is his father's successor. About 1890 they began to make the pills in New York as well as in England, but, as has been seen, not every phrase in the advertisements was nicely readjusted to the change. That is all there is in the whole subject of complaint. There is not the slightest ground for charging the plaintiff with an attempt to defraud the public by these statements, or any reason why the judgment below should not be affirmed, unless it be in a motion of the plaintiff to dismiss. This was met by the fact that the bill seemingly relied upon the registration of the words Beecham's Pills as a trade-mark under the act of Congress as one ground for the jurisdiction of the Circuit Court. *Warner* v. *Searle & Hereth Co.*, 191 U. S. 195, 205, 206; *Standard Paint Co.* v. *Trinidad Asphalt Manuf. Co.*, 220 U. S. 446.

*Decree affirmed.*