### COTY, Inc., v. LE BLUME IMPORT CO., Inc.

### LE BLUME IMPORT CO., Inc., v. COTY et al.

(District Court, S. D. New York. March 8, 1923.)

1. **Trade-marks and trade-names and unfair competition ☜3(1), 22—Uncommon word held not descriptive or deceptive as applied to the only scent sold under that name; "origan."**

Though the word "origan," denoting an aromatic plant, is an English word, it not being a word of common speech and meaning something altogether different from a scent sold by plaintiff under that name, and plaintiff's scent having been the only one so sold in this country for many years, its use was not descriptive or deceptive so as to defeat relief against subsequent unfair competition, though scent with similar smell had been marketed in France and England under that name.

2. **Trade-marks and trade-names and unfair competition ☜3(1)—Rule as to word of descriptive meaning imported from foreign tongue inapplicable when word not applied accurately.**

The rule that word of description imported from foreign tongue and used as there used cannot become trade-mark did not apply, where the name "origan," under which plaintiff sold his scent, though used in France as the name of a scent, was not so used with reference to a scent having the real smell of the origan plant.

3. **Trade-marks and trade-names and unfair competition ☜67—Not necessary that public should have known maker, but name must have signified single source.**

To entitle plaintiff to relief against unfair competition, it is not necessary that the public should have known him to be the maker of the scent sold under trade-name, and it is sufficient if the article was known to come from a single source, but the name must have signified a single source.

4. **Trade-marks and trade-names and unfair competition ☜93(1)—Presumed that name popularized by advertising signified single source to public.**

Where trade in scent sold under trade-name arose from copious advertising, presumption is justified, in absence of contradictory proof, that the name so popularized signified to the public a single source of the article.

---

☜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

5. **Trade-marks and trade-names and unfair competition ⬤21—Priority ordinarily governs on question of proprietary connotation.**

While subsequent user of trade-name may· destroy proprietary connotation on which right to relief against unfair competition depends, priority in use will ordinarily govern.

6. **Trade-marks and trade-names and unfair competition ⬤71—One long using name not a word of common speech entitled to enjoin its use by another.**

The name "origan" applied to a scent not being a part of common speech, one long selling a scent under that name is entitled to enjoin its use by another as unfair competition, and relief will not be limited to distinguishing suffix.

7. **Trade-marks and trade-names and unfair competition ⬤79—Statute not intended to prevent one aggrieved by owner's notice to collector of customs from testing trade-mark in courts.**

·Tariff Act of 1922, § 526(a), prohibiting importation of merchandise bearing trade-mark registered in Patent Office and with Secretary of Treasury, without owner's consent, was not intended to prevent one aggrieved by owner's notice to collector of customs from testing trademark in the courts, or to relegate him to proceeding in Patent Office.

In Equity. Two suits by Coty, Incorporated, against the Le Blume Import Company, Incorporated, and by the Le Blume Import Company, Incorporated, against Francois Joseph de Spoturno Coty, and others. On motions by each plaintiff for temporary injunction, and by defendants in the second suit to dismiss the bill. Motion for injunction in the first suit granted, and other motions denied.

Order affirmed 293 Fed. 344.

These cases come up on three motions. In the first suit the plaintiff moves for a temporary injunction against the use of the word "origan" in the sale of the defendant's scent. In the second the plaintiff moves to compel the defendant Coty to withdraw his notice to the collector of the Port of New York to withhold entry of two parcels of scents, bottled under the name in question, and to compel the collector to release the parcels. In the second suit the defendant also moves to dismiss the bill

Coty is a French perfumer who has organized a Delaware corporation to conduct his American business. Part of this consists of the sale ·of a blended scent sold under the name, "L'Origan," or "L Origan," resembling no known flower or natural smell. This trade Coty began in 1909; recently it has grown to enormous proportions, about $3,000,000 in the year 1922. He has a registered trade-mark "L Origan," and, has systematically suppressed the use of the word by other perfumers. The Le Blume Company is a New York corporation and proposes to market the scent of another French perfumer, d'Héraud, which has a smell closely like Coty's article. D'Héraud's bottles bear the name "origan," but there is no simulation in make-up and the case stands solely on the word.

"Origan" is a word known in English, French, and German,. borrowed from the Latin, meaning an aromatic plant or its extract akin to thyme and marjoram. It has been used in France by several perfumers for a scent which is not definitely shown to smell like Coty's, but may be assumed to do so. How far the smell resembles that of true origan is a point of dispute, but Coty uses none of the essence of origan in his blend. Other facts are stated in the opinion.

Charles H. Tuttle, Murray C. Bernays, and Emily C. Holt, all of New York City, for Le Blume Import Co.

Charles Neave, Hugo Mock, and Asher Blum, all of New York City, for Coty.

William Hayward, of New York City, for the Collector.

LEARNED HAND, District Judge (after stating the facts as above). When Coty began to import his scent into the United States in 1909, the word "origan" signified nothing to his American customers except the article itself. Except for d'Héraud's statement in his affidavit that Oriza had in 1901 "shipped a perfume to the United States" under that name, there is no evidence that before 1909 any one had ever used the word in America upon any toilet scent at all. Under that name Coty has by dint of advertising built up an enormous business, from which d'Héraud and others are naturally anxious to profit. · It is quite true that "origan" is an English word, and though apparently it denotes another botanical genus than "marjoram," commonly the two are assimilated and with them the "thyme" of literature and the pharmocopeia. Each refers to an aromatic plant out of which there may be extracted an essential oil, and while there is a sharp dispute in the papers whether this is in fact used or indeed usable as an ingredient of scents, there seems to be little doubt but that it is. But for all that "origan" is in no sense a word of common speech in English. It has retained currency among pharmacists, but so far as it is not otherwise obsolete, it appears to be found only in works like Sir Richard Burton's Arabian Nights, where the diction is poetic and designedly artificial. I do not believe that my own ignorance of it before this case was exceptional, even among educated persons.

Even if this be not so, the word, so far as it has any meaning whatever, means something altogether different from Coty's scent, the product or the smell. Unfortunately, there is a dispute as to just what the real smell is. The Le Blume Company insist that the oils in evidence, which to my nose are like turpentine, do not smell like origan, but they produce nothing on which they will stand as the true smell. It is true that d'Héraud swears that his "origan" contains the essence and smells like it, but that I cannot accept. If so, then Coty's scent smells of it too, and that without containing a drop. Again, Stanislaus has prepared a compound with 5 per cent. origan—which I assume to be the genuine oil—and the rest of some other fragrant essence. The result is pleasing, but it is not put forward as origan. Now the name of a scent when descriptive means, not that the compound contains it as an ingredient, but that it smells like the thing. It would be, for instance, misleading to name a scent, rose, or lilac, because it contained an imperceptible quantity of those essences, if it did not smell like the flowers. It is therefore quite idle to show that d'Héraud puts some origan in his scent and that Coty does not. Neither fact has any bearing whatever on whether the name is true or false as description. A word means what people understand it to say and there is an end of it. Nobody, at least nobody for practical purposes, who buys Coty's scent or may buy d'Héraud's, understands that she is getting the smell of thyme, marjoram, and the origan of Spenser and Sir Richard Burton. Some pharmacists and men of letters might be deceived, but

so far as I am aware, these are not given to scents, at least in America. And even though here and there some sensuous précieuse be disappointed, Coty may save his trade for aught of her.

[1] All this in my judgment disposes of two of the Le Blume Company's positions, that Coty's user is descriptive and deceptive. There was no deceit in Coty's use of the word, for it did not and could not deceive those to whom it was addressed. The word was not descriptive, since it was not generic, meaning nothing but that particular scent coming in fact from the only source in America, Coty. Nor is this last conclusion affected by the fact, which I accept, that in France and perhaps also in England, a scent of similar smell has been marketed by several others under the name "origan." In those countries the name would be generic and no maker could monopolize it, but its meaning there does not affect its meaning here, because meaning is a question of fact, and when there is but one known source the word cannot be generic in the same sense as when there are many. It is true that the single source may not be known as such, and possibly such a case may not be proper for protection; but for the moment I am concerned only with the French user, which would be a good answer in France, but which is of no importance here.

But it is argued that the Matzoon Cases, Dadirrian v. Yucabian (C. C. Ill.) 72 Fed. 1010, and Dadirrian v. Yucabian (C. C. A, 1) 98 Fed. 872, 39 C. C. A. 321, hold that foreign user will control. In those cases it was indeed decided that a foreign word, however unknown in America, could not be a valid trade-mark, and the rule is generally so stated. In the first place, I am not concerned here with trade-marks, stricti juris, at all, for my jurisdiction does not depend upon it. The rule has never been extended to unfair competition, and even if it be correct in principle as applied to trade-marks, which I venture to question, it has no place whatever in unfair competition, which always depends upon a question of fact.

[2] But there is another distinction than this. The word "origan" is as little a part of the French language, when it means the scent of Coty and the other French perfumers who use it, as it is in English. It has been twisted there as here from its proper meaning and is being misused. No doubt that user would prevent its monopoly there, but it does not correct its misapplication as language. Therefore the doctrine is not relevant that a word of description imported from a foreign tongue and used as there used cannot become a trade-mark. Whatever its other defects it will not fail because there, as here, it has come into colloquial misuse, at least until that user has ripened into the genuine speech of the foreign country. There is nothing in this record which would justify the conclusion that the use of these French perfumers has so added to the French language.

[3, 4] Thus, there remains nothing in Coty's path except to show that his use of the word, itself not descriptive or misleading, has become enough associated with himself as to justify the inference that buyers under that name are his customers. It is, of course, not necessary that he should be known as the maker; on the contrary, it will

suffice if the article be known as coming from a single, though anonymous, source. Nims, § 42. Most cases of secondary meaning are of that kind. But it is undoubtedly necessary that it must signify a single source; there might be a large trade so arising that customers did not know whether there was one, or more than one, maker. But that possibility may always be met when the trade, as is generally the case, arises from copious advertising. There the word being spread broadcast by one alone will not ordinarily fail to retain that suggestion of singularity which is all that is necessary. However it may be in the presence of contradictory proof, the presumption is then justified that a word so popularized carries the necessary connotation. When, as in the cases at bar, it is in addition shown that to all practical intents the word so used is not descriptive at all in the minds of buyers, the owner's case is substantially impregnable.

[5] Now it is true that here there is some proof of the sale of scent under the name "origan" by other perfumers. D'Héraud says that in 1901 Oriza sold some in the United States, but how much or how continuously it does not appear. Against this bald assertion, I have the fact that nobody here had ever heard so. Whatever it was, certainly it made no impression upon the trade and has long since disappeared from the knowledge of present customers. Again, since Coty's trade began in 1909, other French perfumers have sold here under that name. Subsequent user may, of course, destroy the proprietary connotation on which such cases depend; but ordinarily priority will govern, and the evidence here of subsequent use is too fragmentary and unspecified to raise a doubt. It is Coty's success and the enormous extent of his trade which has attracted competition; and the chance that there may be individuals to whom the name has come to mean more than one source is too feeble to imperil the conclusion that in the vast number of instances it means but a single maker. Indeed, I regard the case as substantially ruled by Coca-Cola v. Koke Co., 254 U. S. 143, 41 Sup. Ct. 113, 65 L. Ed. 189. Here, as there, the name "means a single thing coming from a single source and well known to the community." The scent "characterizes the name as much as the name" the scent, and "probably means to most people the plaintiff's familiar product, to be had everywhere, rather than a compound of particular substances."

[6] Such being the situation, Coty's rights seem secure. If the word were a part of the speech of customers, it might indeed be proper to limit his protection to a distinguishing suffix; but that I think unnecessary. It is not such a word, but in effect arbitrary and meaningless. If d'Héraud means to market the same scent here, it is fair that he should use another name for it. The fact that Coty has given its name to that thing, if he keeps the connotation of proprietorship, will not justify another in its appropriation. Jacobs v. Beecham, 221 U. S. 263, 31 Sup. Ct. 555, 55 L. Ed. 729. The description inheres in the ownership, and was created along with the good will. Coty may therefore take an unconditional injunction in his own suit on giving a $10,000 bond, and a denial of the motion in Le Blume's suit.

[7] Coty's motion to dismiss Le Blume's suit I shall deny. Section

526 (a) of the Tariff Act of 1922 (42 Stat. 975) was intended only to supply the casus omissus, supposed to exist in section 27 of the Act of 1905 (Comp. St. § 9513), because of the decision of the Circuit Court of Appeals in Bourjois v. Katzel (275 Fed. 539). Had the Supreme Court reversed that decision last spring, it would not have been enacted at all. It was not meant to prevent a person aggrieved by a trade-mark owner's notice to the collector from testing the trade-mark in the courts, or to relegate him to a proceeding in the Patent Office. That would give to mere registration an effect contrary to its whole history, and in view of its grant ex parte would be an intolerable power over competitors.

Motion in Coty v. Le Blume granted.

Motion for injunction in Le Blume v. Coty denied

Motion to dismiss in Le Blume v. Coty denied.