**STANDARD OIL CO. v. CALIFORNIA PEACH & FIG GROWERS, Inc.**

District Court, D. Delaware. October 1, 1928.

No. 651.

Edward S. Rogers, of New York City, and William G. Mahaffy, of Wilmington, Del., for plaintiff.

A. W. Boyken (of Miller & Boyken), of San Francisco, Cal., and James I. Boyce, of Wilmington, Del., for defendant.

MORRIS, District Judge. The basic question here presented is one of trade-mark infringement. "Nujol," a coined, arbitrary word, was adopted, used, and registered by the plaintiff in the year 1915 as its trade-mark for refined mineral oil for use in the treatment of constipation. Three subsequent registrations for other uses have been made. Between the time of its adoption and the end of 1926, the plaintiff sold more than 27,000,-000 bottles so labeled, and by the end of 1927 it had invested more than $6,000,000 in advertisements in which "Nujol" was prominently featured.

In 1926 "NUJOL treated FIGS," a laxative, processed, packed, and labeled by the defendant, appeared upon the market. To justify its use of plaintiff's trade-mark, the defendant takes the position that no one receiving a package of figs would believe that he was receiving a bottle of oil, that the two articles are not of the same class, and that plaintiff's exclusive right to the use of its mark is limited to goods of the same class. ▪▪ It is true, I think, that since a trade-mark confers on its owner no right in gross or at large, like a statutory copyright or a patent for an invention, United Drug Co. v.

Rectanus Co., 248 U. S. 90, 97, 39 S. Ct. 48, 63 L. Ed. 141, and since its sole office is to indicate that the goods of the same general class to which it is attached emanate from a single source or reach the consumer through the same channels of trade, Hanover Milling Co. v. Metcalf, 240 U. S. 403, 412–413, 36 S. Ct. 357, 60 L. Ed. 713, the proprietor of a trade-mark is without right to forbid or exclude the use of the same mark, words, or symbol by another upon goods of a class and quality so different from those of the original user as to preclude the probability that purchasers will be misled into believing that the different articles spring from a common source, Schechter's Historical Foundations of Trade-Mark Law, pp. 146–150; Nims on Unfair Competition and Trade-Marks, § 221; Hanover Milling Co. v. Metcalf, 240 U. S. 403, 412–413, 36 S. Ct. 357, 60 L. Ed. 713; for in the absence of such confusion in the minds of purchasers the use of the mark by another brings about no interference with the trade-mark owner's right of "reasonable expectation of future patronage," E. S. Rogers, Good Will, Trade-Marks, and Unfair Trading, p. 13. But goods are of the same general class when either their general and essential characteristics are the same, Phœnix Paint, etc., Co. v. Lewis, 32 App. D. C. 285, or when, for any other reason, they are so related or associated, either in fact or in the mind of the public, that a common trade-mark would probably lead purchasers to conclude that the several articles have a common origin, Duro Co. v. Duro Co., 27 F.(2d) 339 (C. C. A. 3); Akron-Overland Tire Co. v. Willys-Overland Co., 273 F. 674 (C. C. A. 3); Aunt Jemima Mills Co. v. Rigney & Co., 247 F. 407 (C. C. A. 2); Eastman Co. v. Kodak Cycle Co., 15 R. P. C. 105. Moreover, the owner of a trade-mark "truly arbitrary, strange, and fanciful" is entitled to a monopoly of use for his mark in a wider field than is he who employs a mark not of that character. France Milling Co. v. Washburn-Crosby Co., Inc. (C. C. A.) 7 F.(2d) 304, 306.

"Nujol" and "NUJOL treated FIGS" are both offered to the public as a specific for the same human ailment. Both are sold by druggists. They are exhibited side by side on their shelves. That they are of the same general class, and that a common mark must inevitably lead to the belief of common origin, cannot, I think, be open to serious doubt.

In further justification of its use of the word "Nujol," the defendant relies upon the fact, established by the evidence, that the figs are treated with plaintiff's product, "Nujol," bought in the open market. It contends that, in view of this fact, it is manifest that the designation of the product as "NUJOL treated FIGS" is wholly accurate, that the statements made upon the cartons are true, that if purchasers are led into mistakes such consequence is not due to any false representation, and that it is well established that equity will not enjoin the telling of truth.

That equity will not enjoin against telling the truth may be accepted as a sound general principle. Delaware & Hudson Canal Co. v. Clark, 13 Wall. 311, 20 L. Ed. 581. It is likewise clear that one who buys another's goods may—ordinarily, Bourjois & Co. v. Katzel, 260 U. S. 689, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567—use, or sell them with the latter's trade-mark upon them. Gorham Mfg. Co. v. Emery-Bird-Thayer Dry-Goods Co. (C. C.) 92 F. 774; Vitascope Co. v. United States Phonograph Co. (C. C.) 83 F. 30.

Again, the right of the purchaser of genuine trade-marked bulk goods to divide the bulk into smaller quantities and sell the smaller packages under the trade-mark, though not so broad and general as to exist under all circumstances, Krauss v. Jos. R. Peebles' Sons Co. (C. C.) 58 F. 585; Coca-Cola Co. v. Bennett (C. C. A.) 238 F. 513 (C. C. A. 8); Knight v. Milner (D. C.) 283 F. 816, is well recognized, particularly if clear disclosure is made that the dividing and repacking are not done by the owner of the mark, Russia Cement Co. v. Frauenhar (C. C. A.) 133 F. 518; Apollinaris Co. v. Scherer (C. C.) 27 F. 18.

The mere fact, however, that genuine goods are used by their purchaser as an ingredient of a combination confers no right upon him to use the trade-mark of that ingredient as the trade-mark for the new article. Ingersoll v. Doyle (D. C.) 247 F. 620; Lambert Pharmacal Co. v. Listerated Co. (D. C.) 24 F.(2d) 122. But such purchaser may state the nature of the component parts, the source from which they were derived, and may use on his own labels or cartons the name designating the purchased ingredient to show the true relation of that ingredient to the new article or combination offered by him for sale, provided such name be used collaterally and in a manner not to lead the public to believe that the new product and the ingredient emanate from the same source. Prestonettes, Inc., v. Coty, 264 U. S. 359, 44 S. Ct. 350, 68 L. Ed. 731. When, however, a defendant makes use of another's trade-name or trade-mark, the burden is upon him to justify such use and to show that the right,

if any, has been exercised with reasonable regard to the rights of the owner of such name or mark. Jacobs v. Beecham, 221 U. S. 263, 31 S. Ct. 555, 55 L. Ed. 729; Hitchman Coal & Coke Co. v. Mitchell, 245 U. S. 229, 253, 38 S. Ct. 65, 62 L. Ed. 260, L. R. A. 1918C, 497, Ann. Cas. 1918B, 461.

■ The defendant has not met this burden. Defendant's carton is in size and shape practically the same as that of plaintiff. On the face and the two sides of its carton defendant places the words "NUJOL treated FIGS" in vertical order, so that the word "Nujol" appears thereon in the same place and in substantially the same sized type as on plaintiff's cartons. Horizontally across the back of its carton at the top is "NUJOL treated FIGS." There, also, emphasis is placed upon the first, as well as upon the last, word. Three paragraphs of descriptive and commendatory matter follow. Therein "Nujol" appears three times, and in each instance it is made prominent by type much larger than that employed for any other words of the text. Moreover, "Nujol" is thus emphasized, notwithstanding the cartons, when packed, contain at least 98.78 per centum of figs, and not more than 1.22 per centum of Nujol. The figs will retain no larger quantity. Even this amount evaporates more or less slowly, with the result that some packages were found to contain a much smaller quantity or none. The Nujol content of the package is nowhere stated, either directly or indirectly, upon the carton. The manner in which defendant has made use of plaintiff's trade-mark cannot do otherwise, I think, than to lead purchasers to believe that "Nujol" and "NUJOL treated FIGS" have a common origin.

■ The defendant seeks to prevent a finding of confusion upon the further ground that many advertisements of "Nujol" do not contain the name or other indication of the identity of its manufacturer or producer. But "a person whose name is not known, but whose mark is imitated, is just as much injured in his trade as if his name was known, as well as his mark. His mark, as used by him, has given a reputation to his goods. His trade depends greatly on such reputation. His mark sells his goods." Powell v. Birmingham Vinegar Brewery Co., Ltd., 13 R. P. C. 235, 250; Walter Baker & Co. v. Slack (C. C. A.) 130 F. 514, 518; Coca-Cola Co. v. Koke Co., 254 U. S. 143, 146, 41 S. Ct. 113, 65 L. Ed. 189. Defendant's use of plaintiff's trade-mark stakes the reputation of the plaintiff upon the character of defendant's goods. Bourjois & Co. v. Kat-

zel, 260 U. S. 689, 692, 43 S. Ct. 244, 67 L. Ed. 464, 26 A. L. R. 567. The plaintiff is not required to submit to this hazard. Moreover, the wrongful use of the trade-mark of another is of itself evidence that the person making such improper use intended to defraud, to palm off his goods as another's. Lawrence Mfg. Co. v. Tennessee Mfg. Co., 138 U. S. 537, 549, 11 S. Ct. 396, 34 L. Ed. 997.

■ Lastly, the defendant asserts that it is solely a manufacturing concern; that it neither owns nor sells figs or anything else; that it receives figs from California Peach & Fig Growers' Association, a California corporation, not a party to this suit, processes, packs, and then ships them "as and when directed in the name of and/or according to directions of the California corporation," and that, consequently, it, the defendant, is not an infringer, particularly a primary infringer, of plaintiff's mark. But it appears from the evidence, and from defendant's answers to plaintiff's interrogatories, that the experiments looking to the marketing of "NUJOL treated FIGS" were made by or for the defendant; that defendant is the entity that makes the cartons carrying the infringing mark, the entity that packs the figs treated by it in the cartons bearing that mark, and the entity that actually starts the product so processed, packed, and illegally marked into the channels of trade. The marketing is done by Sunland Sales Co-operative Association, of Fresno, Cal., under a tripartite contract between that association, the defendant, and the California Peach & Fig Growers' Association. These facts support the allegations of the bill of complaint, and make it obvious that defendant is an infringer of plaintiff's mark. Upmann v. Forester, 24 Ch. Div. 231.

■ Since defendant's infringement lies, not in the use of the word "Nujol," but in its misuse, or manner of use, not every use of the word by the defendant will be enjoined. But it may not be used as a part of the name, or otherwise, to indicate defendant's goods. It may be used collaterally to disclose that "Nujol" is a constituent of defendant's product, and the amount or percentage of "Nujol" put or to be found therein. Coty, Inc., v. Leo Blume, Inc. (C. C. A.) 24 F.(2d) 924, 925, 926. To the end, however, that the future advantages to the defendant and the corresponding loss to the plaintiff arising inevitably from the past misuse of plaintiff's mark may, for plaintiff's benefit, be brought promptly to a termination, the use of the word "Nujol" by the defendant on its car-

tons, elsewhere than upon the back, will be enjoined.

A decree otherwise in substantial conformity with that set out in François Joseph de Spoturno Coty v. Prestonettes, Inc., 12 T. M. R. 279, and approved by the Supreme Court in Prestonettes, Inc., v. Coty, 264 U. S. 359, 44 S. Ct. 350, 68 L. Ed. 731, may be presented.