## VICK CHEMICAL COMPANY v. STROH-MEIER.
### No. 5191.

District Court, E. D. Pennsylvania.
April 3, 1930.

90

Allen M. Reed, of Chicago, Ill., James F. Hoge, of Greensboro, N. C., J. S. Clark, Jr., of Philadelphia, Pa., for plaintiff.

Frederick S. Stitt, of Washington, D. C., and Busser & Harding, of Philadelphia, Pa., for defendant.

THOMPSON, District Judge.

This suit was brought by bill in equity praying for an injunction to restrain alleged infringement of the plaintiff's trade-mark and unfair competition in trade. The plaintiff, Vick Chemical Company, and its predecessors have for many years manufactured and sold a medicinal salve under the name "Vick's Vapo Rub." The product contains certain volatile substances combined in a petrolatum base by a process and formula originated by the plaintiff and recommended and intended for use in the treatment of colds, coughs, and other forms of congestion and inflammation. The plaintiff has caused the words "VICK'S" and "VAPO RUB" to be duly registered as its trade-marks under the Act of February 20, 1905 (15 USCA §§ 81–109). It has built up and established a very extensive and profitable business throughout the United States and has expended large sums in advertising and distributing its product.

These facts are conceded by the defendant, and it is also conceded that the product is efficacious for the treatment of throat ailments.

The defendant began in 1927 to manufacture and sell a cough drop which he calls the "Wonder Drop." He uses that name as his trade-mark, and has applied for its registration as such in the Patent Office. The defendant puts his cough drop upon the market under the name of "Strohmeier's Wonder Drop" and sells it in small boxes, and in cans and cartons which have prominently marked upon them the words, "Medicated with Vick's Vapo Rub." The defendant has built up a large and successful business in his cough drops and asserts that he uses the plaintiff's trade-names and the statement that his product is medicated with Vick's Vapo Rub in the exercise of a lawful right to purchase the product of the plaintiff and use it in his cough drops and to advertise and sell it as containing the plaintiff's product, and to thereby inform the public that he is using a product for which his encomiums extol the excellence of the plaintiff's product as highly as those of the plaintiff itself.

It is claimed by the plaintiff that the public is confused and deceived into the erroneous belief:

First, that the defendant's cough drops are manufactured by the plaintiff;

Second, that the defendant is connected or in some way associated with the plaintiff in the manufacture of the cough drops;

Third, that the plaintiff's well-known trade-marks warrant the character and standard of quality of the cough drops; and

Fourth, that the medicinal properties of Vick's Vapo Rub are present in the cough drops in sufficient quantity to impart to them the effects and results commonly associated with the use of Vick's Vapo Rub.

Ample testimony was produced through witnesses on behalf of the plaintiff to establish the fact that druggists and other dealers had sent orders to the plaintiff and to its distributors for Vick's Cough Drops, and ample testimony through witnesses on behalf of the defendant to establish the fact that they sold Strohmeier's Wonder Drops but had never been asked for them under any other name. The effect of this proof on the part of the defendant was merely to show by his witnesses that some part of the purchasing public was not confused as to the source and manufacture of the Wonder Drop. It does not contradict the testimony of witnesses on behalf of the plaintiff. The evidence is sufficient in my opinion to warrant the conclusion that the impression of a large proportion of the purchasing public is that the

defendant's cough drops are manufactured by the plaintiff or that the defendant is connected or associated in such manufacture with the plaintiff. It is not denied by the defendant that his intention is to represent to the public that the medicinal properties of Vick's Vapo Rub are present in his cough drops in sufficient quantity to impart to them the effects and results commonly associated with Vick's Vapo Rub.

The evidence shows that the plaintiff's Vapo Rub and its business standing has enabled it to obtain for its product a much wider and more favorable reputation than that of Strohmeier's Wonder Drop. There was therefore a very attractive temptation to the defendant to take advantage of this established standing and reputation of the plaintiff and its product for stimulating trade in Strohmeier's Wonder Drops which they would not have had without appropriating the plaintiff's trade-name to aid in bestowing a reputation upon the defendant's product.

The defendant asserts that his acts are justified under the authority of Prestonettes, Inc., v. Coty, 264 U. S. 359, 44 S. Ct. 350, 351, 68 L. Ed. 731. The gist of the Coty Case, so far as it is applicable to the present case, is stated tersely by Mr. Justice Holmes as follows:

"Defendant of course by virtue of its ownership had a right to compound or change what it bought, to divide either the original or the modified product, and to sell it so divided. * * *

"If the compound was worse than the constituent, it might be a misfortune to the plaintiff, but the plaintiff would have no cause of action as the defendant was exercising the rights of ownership and only telling the truth.

"It [the trade-mark] does not * * * prohibit the use of the word or words. * * * A trade-mark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's product as his. * * *

"It seems to us that no new right can be evoked from the fact that the perfume or powder is delicate and likely to be spoiled, or from the omnipresent possibility of fraud. If the defendant's rebottling the plaintiff's perfume deteriorates it and the public is adequately informed who does the rebottling, the public * * * is likely to find it out."

Judge Morris followed the doctrine of the Coty Case in Standard Oil Company v. California Peach & Fig Growers, Inc. (D. C.) 28 F.(2d) 283, 285, in the following language: "The mere fact, however, that genuine goods are used by their purchaser as an ingredient of a combination confers no right upon him to use the trade-mark of that ingredient as the trade-mark for the new article. * * * But such purchaser may state the nature of the component parts, the source from which they were derived, and may use on his own labels or cartons the name designating the purchased ingredient to show the true relation of that ingredient to the new article or combination offered by him for sale, provided such name be used collaterally and in a manner not to lead the public to believe that the new product and the ingredient emanate from the same source."

If the defendant is merely using Vapo Rub as a part of a compound without fraud, and using in his labels statements showing the true relation of Vapo Rub to the cough drops, and does not mislead the public to believe that the product of his combination is put forth by the plaintiff or that the plaintiff is connected with its production, he is conducting his business in accordance with his rights. This brings us, therefore, to the question whether the statement, "Medicated with Vick's Vapo Rub," as applied to these cough drops, is true. It was conclusively established by chemists called as witnesses for the plaintiff that the results of analyses made by them of "Vick's Vapo Rub" and of "Strohmeier's Wonder Drops" show that the principal volatile constituent in the Strohmeier product is, to the extent of 50 per cent. or more, oil of anise, and that there is no oil of anise in Vick's Vapo Rub, and therefore, if Vick's Vapo Rub is used in the manufacture of the defendant's cough drops, the composition of the Vapo Rub is changed in the heating necessary to produce the cough drop so that a very small percentage of the volatile ingredients of Vick's Vapo Rub is found in Strohmeier's Wonder Drops. I find from the medical testimony that, as manufactured, there is no real medication by means of Vick's Vapo Rub in the defendant's product. That being the case, the statement of medication is false and untrue.

The burden of proof in these cases is upon the defendant to show that he is justified in using the plaintiff's trade-name. Jacobs v. Beecham, 221 U. S. 263, 31 S. Ct. 555, 55 L. Ed. 729. The defendant did not sustain that burden against the testimony of the plaintiff's chemical and medical experts, and it therefore goes uncontradicted.

There was some faint suggestion at the close of the hearing that the defendant be allowed by decree of the court to substitute for the word "Medicated" the word "Flavored." I am not satisfied, however, that the defendant has introduced any testimony sufficient to sustain his claim that Vick's Vapo Rub is used at all in his cough drops. The testimony on the part of the defendant and his employees was entirely too loose and general to predicate upon it a finding of fact in a situation where the defendant must sustain the burden of proof. I do not feel, therefore, that there is any duty incumbent upon the court to direct the defendant in the manner in which he may lawfully conduct his business in the future so as not to violate the plaintiff's rights.

The defendant will be enjoined against use of the plaintiff's trade-name, as he has been using it, to deceive and perpetrate a fraud upon the public and, by pirating its trade-marks, to injure and damage the reputation the plaintiff has built up.

A decree may be entered for an injunction accordingly and for damages sustained by the plaintiff and profits derived by the defendant from his acts of infringement and unfair competition.