David Kusnetz, J.
The plaintiff, a domestic corporation organized in 1930, commenced this action in the early part of 1950 to enjoin the defendants from using in New York State the names “ Hershey’s ” or “ Hershey’s Ice Cream ” or any other name of which “ Hershey’s ” is a part, from selling or offering for sale in New York State any goods, wares or merchandise similar to those produced by the plaintiff under the name “ Hershey’s ” or “ Hershey’s Ice Cream” or any kindred name, and for incidental relief, and that the defendants account for the profits ‘ ‘ unlawfully made by them in the State of New York from the use of the names ‘ Hershey’s ’ and ‘ Hershey’s Ice Cream ’ as aforesaid ” together with the damages allegedly sustained by the plaintiff and the costs of this action. The answer of the defendants consists of a general denial and five defenses, the last two also by way of counterclaims for a permanent injunction restraining the plaintiff from designing, manufacturing, selling or otherwise dealing in ice cream or ice cream products with the name of “ Hershey ” or “Hershey’s ”, or any variation thereof, or any name similar thereto, and for incidental relief.
Notwithstanding the defenses based upon trade-mark registrations asserted in the defendants’ answer, concerning which no infringement is claimed, the basic question to be determined in this case is which, if any, of the parties has been guilty of unfair competition in connection with the use of trade names for their respective ice cream and ice cream products, and if any party is entitled to equitable intervention.
Upon the evidence adduced at the trial, it developed that not a single person connected with the plaintiff corporation since its organization in January, 1930 bore the surname Hershey or any similar name, whereas two brothers named Hershey were the founders of the defendants’ business in 1890, which began as a partnership, later became a Pennsylvania corporation, and in 1927 a Delaware corporation — the Hershey Creamery Corporation — which at the present time owns all of the capital stock of the New York corporation organized in 1937 — the Hershey Creamery Corporation of New York. True, the plaintiff claimed at the trial that its alleged right to use the name *814 “ Hershey ” dated back to the 1920’s, when its president took employment as a truck driver with a firm that was using the name “ Hershey’s ”, but this proof was vague and insubstantial and did not have a shred of corroboration, except proof of a single telephone listing in 1924 of the name “ Hershey’s Ice Cream Company.” There was no evidence whatsoever upon what legal basis the plaintiff, organized in 1930, could have possibly succeeded to that name.
And so, upon the basis of all the evidence in the case, the court is constrained to find that the defendants have demonstrated the priority of appropriation of the name “ Hershey’s ” or any similar name, in connection with the ice cream and ice cream products business in which both parties are engaged.
However, as early as 1930, the defendants knew that the plaintiff was using that name and acquiesced in such use. The plaintiff was warned in writing by attorneys acting for the defendants as early as July 8, 1930 and June 15, 1931 that it was unlawfully appropriating the defendants’ name and told to desist, but it did not do so. In the early 1930’s representatives of the defendants called at the plaintiff’s premises, looked over the plant, “ the bills, the books, and everything ” yet took no steps to stop the plaintiff from its alleged unfair competition until this action was commenced when in the defendants’ counterclaims they sought such relief for the first time.
The defendants’ explanation for their long delay is that they were “ content to let the economic laws of business competition take care of the situation.” It would seem that they would still not have sought to enforce their prior right to use the names “ Hershey ” or “ Hershey’s ” had not the plaintiff brought this action. This is understandable when consideration is given to the fact that the plaintiff does not deal directly with the ultimate consumer, the public, but distributes its products in bulk, manufactured by another corporation, to stores, restaurants, catering halls, bakeries and establishments of that character, who are not likely to be misled by the similarity in the names into mistaking the plaintiff for the defendants, and vice versa.
There was no evidence of any misrepresentation or deception by the plaintiff to the trade or any confusion in the minds of customers that when dealing with the plaintiff they were trading with the defendants; nor was there any evidence of value that the .defendants have suffered any loss of business or good will or that there is any reasonable likelihood of such loss in the future. (Cf. Wholesale Supply Corp. v. Wholesale Bldg. Materials Corp., 280 App. Div. 189, affd. 304 N. Y. 854.) Indeed, although this action was commenced early in 1950 and could *815 long since have been disposed of, apparently neither side found it urgent to press for an early trial. It must be remembered that ‘1 Equity * * * interferes in the transactions of men by preventive measures only when irreparable injury is threatened ”. (Thomas v. Musical Mut. Protective Union, 121 N. Y. 45, 52.)
Under all these circumstances the court will leave the parties in the position they placed themselves these many years, competing with each other and content to let the economic laws of business competition take care of the situation.
Accordingly, both the complaint and the counterclaims are dismissed on the merits, without costs. Settle judgment accordingly.