**HERSHEY CREAMERY COMPANY,**
Plaintiff,

v.

**HERSHEY CHOCOLATE CORPORA-
TION** and Consolidated Foods
Corporation, Defendants.

Civ. A. No. 66–3915.

United States District Court
S. D. New York.

May 8, 1967.

Robert B. Whittredge, William J. Barnes, Fish, Richardson & Neave, New York City, for plaintiff.

Arthur Seidel, Seidel & Gonda, Philadelphia, Pa., William M. Bradner, Jr., and Dunnington, Bartholow & Miller, New York City, for defendant.

Motion for Preliminary Injunction
Findings of Fact and Conclusions of Law

MOTLEY, District Judge.

Plaintiff, Hershey Creamery Company (Creamery), is a Delaware corporation having its principal place of business in Harrisburg, Pennsylvania. Its chief business interest in this law suit is the manufacture and sale, in interstate commerce, of ice cream and ice cream products under the trade name and trademark HERSHEY'S. One of plaintiff's products is chocolate covered ice cream bars which bear its trademark HERSHEY'S.

Defendant Hershey Chocolate Corporation (Chocolate) is also a Delaware corporation having its principal place of business in Hershey, Pennsylvania. This defendant's business is the manufacture and sale of chocolate bars, chocolate coatings and many other kinds of chocolate products, likewise in interstate commerce, under its famous trademark HERSHEY'S.

Defendant Consolidated Foods Corporation (Joe Lowe) is a Maryland corporation with a place of business in New Jersey. This second defendant, and in particular its Joe Lowe Company Division, is the owner of the well known trademark CHEERIO for chocolate coated ice cream bars. Defendant Consolidated and its Joe Lowe Division are engaged in the business of licensing companies throughout the country in the production of chocolate covered ice cream bars and in the use of its trademark CHEERIO.

Defendant Chocolate recently licensed the other defendant to use and sublicense the use of Chocolate's well known trademark HERSHEY'S, under certain conditions, in connection with defendant's ice cream bar business.

Both defendants are licensed to do business in New York.[1]

On November 17, 1966, plaintiff commenced this action. In its complaint, plaintiff alleges that defendants are infringing plaintiff's registered trademark HERSHEY'S in the ice cream bar field, unfairly competing with plaintiff in violation of the common law, and using false designations of origin, false descriptions, and false representations as to the ice cream bars sponsored by defendants. Plaintiff's first cause of action arises under 15 U.S.C. § 1114. Plaintiff's second cause of action is based in the common law. Plaintiff's third cause of action arises under 15 U.S.C. § 1125(a).

The relief sought by plaintiff is a preliminary and permanent injunction restraining defendants from the unlawful conduct alleged as well as costs, attorneys fees, loss of profits and other appropri-

---

1. On February 20, 1967, Judge Ryan of this court denied the motion of defendants under 28 U.S.C. § 1404 to transfer the venue of this action to the Middle District of Pennsylvania.

ate relief. Plaintiff does not seek to bar defendants from using the famous trademark HERSHEY'S in any fashion. The injunctive relief sought would not debar use of said mark "when it appears within other text material which clearly and specifically associates said mark only with the chocolate coating or flavoring of the Ice Cream Product to which it relates and where such coating or flavoring is supplied by Chocolate."

Defendants have denied all alleged violations of law and have counterclaimed. Defendants seek a declaration that plaintiff's trademark, Registration No. 665,-835, is invalid, 15 U.S.C. § 1119, and in connection therewith damages, 15 U.S.C. § 1120. Defendants seek damages allegedly sustained by them as a result of acts of trade libel and interference with their business relations with third parties. Defendants, in addition, seek injunctive relief to prevent plaintiff from releasing further advertisements or statements attacking defendants directly or indirectly. Defendants further desire to recover their attorney's fees and costs.

Plaintiff's reply to defendants' counterclaims contains additional claims seeking to: 1) have defendants' licensing program deemed invalid as a deception of the public, 15 U.S.C. § 1055; 2) have defendants' licensing program deemed invalid because defendants fail to exercise legitimate control over the quality of the goods to be produced under the licensing agreement, 15 U.S.C. §§ 1055, 1127; and 3) have defendants' licensing program deemed invalid as a violation of the antitrust laws, to wit: 15 U.S.C. §§ 14, 18, and 15 U.S.C. §§ 1 and 3.

This court has jurisdiction of this action. 28 U.S.C. § 1338(a) and (b) and 15 U.S.C. § 1121.

■■■ Plaintiff's motion for preliminary injunction was filed January 30, 1967, and heard by this court on February 14, 1967.[2] The motion for preliminary injunction is denied. There are disputed questions of fact which should be resolved in a trial of the issues and not by the weighty affidavits in which these disputed facts are found. The issues raised by the pleadings also make it unclear, at this juncture, what relief the parties will ultimately be entitled to under the applicable law. In short, plaintiff has not sustained its heavy burden of proof, required in a case of this kind, for the grant of a preliminary injunction. The findings of fact and conclusions of law which constitute the grounds for the court's action, as required by Rule 52(a), Fed.R.Civ.P., are set forth below.

On January 3, 1928, plaintiff obtained Trademark Registration No. 237,315 for the name HERSHEY'S for use on ice cream and butter products. This registration expired in 1948. On August 12, 1958, plaintiff became the owner of Trademark Registration No. 665,835 for the name HERSHEY'S on ice cream and

2. Upon applications for preliminary injunctions where plaintiff relies on affidavits and where there are apt to be opposing affidavits raising issues of fact, plaintiffs are perhaps foregoing an opportunity to prevail which is provided for by Rule 65(a) (2) Fed.R.Civ.P. in not presenting live testimony. That rule clearly indicates that an applicant for preliminary injunction is entitled to a hearing in the nature of a trial. "Hearing requires a trial of an issue of fact. Trial of an issue of fact necessitates an opportunity to present evidence. Sims v. Greene, 3 Cir., 161 F.2d 87." Hawkins v. Board of Control, 253 F.2d 752 (5th Cir. 1958). Moreover, Rule 52(a) provides: "In all actions tried upon the facts without a jury * * *, the court shall find the facts specially * * *." Here the court has been unable to decide the disputed facts because it has been deprived of the benefit of live testimony, cross-examination, and an opportunity to observe the demeanor of witnesses. "Finding facts requires the exercise by an impartial tribunal of its function of weighing and appraising evidence offered, not by one party to the controversy alone, but by both." Sims v. Greene, 161 F.2d 87 (3rd Cir. 1947). Finally, Rule 65(a) (2) provides, that, "Before or after the commencement of the hearing of an application for a preliminary injunction, the court may order the trial of the action on the merits to be advanced and consolidated with the hearing of the application." It seems that cases of this kind should be handled as contemplated by Rules 65 and 52.

butter products. This second registration was issued after first being rejected on the ground that it would likely cause confusion with the trademark of defendant Chocolate (Reg.No.54,041 of June 19, 1906). In 1963, plaintiff filed in the Patent Office with respect to the 1958 registration the use affidavit required by 15 U.S.C. § 1058(a). Thereafter, plaintiff's right to use its registered HERSHEY'S mark in commerce for ice cream and butter became incontestable, 15 U.S. C. § 1065, except as to one of the grounds for which application to cancel a trademark may be filed, at any time, under 15 U.S.C. § 1064(c). That section provides, in part, for cancellation "[a]t any time if the registered mark * * * or *its registration was obtained fraudulently * * *.*" (Emphasis added). Plaintiff claims there was no fraud involved in securing its 1958 registration for its HERSHEY'S mark, only innocent error. Defendants' affidavits raise a question of fact as to this threshold issue. If plaintiff prevails on the trial on this issue, it may then be entitled to further relief.[3]

On June 19, 1906, defendant, Chocolate, obtained Trademark Registration No. 54,041 for the name HERSHEY'S for use on chocolate, cocoa, and chocolate preparations. This trademark registration is not here challenged. It should be noted that this registration includes use of the name HERSHEY'S on chocolate coatings.

Plaintiff has used its trademark on ice cream products continuously in interstate commerce since at least 1920, and probably from 1910 in the State of Pennsylvania. Defendant has used its famous HERSHEY'S trademark in distinctive silver letters on a maroon background since about 1903 on various chocolate and cocoa products.

Sales of plaintiff's ice cream products under its HERSHEY'S trademark have exceeded $69,000,000 in the period 1955 through 1965. Plaintiff's expenditures in selling, advertising and promoting ice cream products under its HERSHEY'S trademark in the same period have been in excess of $14,000,000.

Chocolate's trademark is one of the celebrated trademarks for chocolate products and has obtained universal recognition. Chocolate's trademark is so well known and recognized in the chocolate product field that its owner refuses to advertise its products through conventional advertising media. Chocolate's annual sales exceed $200,000,000.

Defendant Consolidated is one of the largest corporations in the United States in the food business. Its annual sales are in excess of $800,000,000. Consolidated's Joe Lowe Division is in the ice cream bar business and licenses its famous trademarks for frozen confections. It has had success in licensing its most prominent trademarks for frozen confections on a stick, such as, "POPSICLE", "FUDGESICLE", "CREAMSICLE", and "CHEERIO".

Chocolate and the Joe Lowe Division of Consolidated engaged in a joint research and development effort to find a satisfactory chocolate coating for ice cream bars on a stick. Together, defendants developed a chocolate coating which they believe to be a necessary improvement in the quality of the chocolate coatings on ice cream bars. The present plan is to use this new product on two kinds of ice cream bars. A light chocolate coating will be used on bars in which the ice cream, itself, is chocolate. A

---

3. Plaintiff may ultimately prevail on this issue but it seems clear that before an injunction may be granted, plaintiff must overcome by testimony the allegations of fraud, with factual statements to support them, which are here made with particularity. If these allegations prove true, the court might well, in the exercise of its discretion, bar plaintiff's action on these grounds as dictated by the doctrine of unclean hands as well as by statute. 15 U.S.C. § 1064(c). Cf., Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co., 324 U.S. 806, 65 S.Ct. 993, 89 L.Ed. 1381 (1945); Jacobs v. Beecham, 221 U.S. 263, 31 S. Ct. 555, 55 L.Ed. 729 (1911); Manhattan Medicine Co. v. Wood, 108 U.S. 218, 2 S.Ct. 436, 27 L.Ed. 706 (1883).

darker chocolate coating will be used on the bars in which there is vanilla ice cream.

Chocolate and Joe Lowe have embarked on an ambitious licensing campaign for their jointly developed product. Under an agreement between these defendants, Joe Lowe has licensed and will license ice cream manufacturers who purchase the new coating for use on ice cream bars to co-feature defendant Chocolate's trademark HERSHEY'S in silver letters on a maroon background in the sale of such ice cream bars together with Joe Lowe's famous trademark CHEERIO or the licensee's own trademark.

Defendants have admitted actual knowledge of plaintiff's HERSHEY'S trademark for ice cream products, including chocolate covered ice cream bars, of plaintiff's use of that trademark for such products, and of plaintiff's registration of the mark for such products, all before defendants began their HERSHEY'S licensing arrangements and program.

On October 11, 1966, two representatives of Joe Lowe visited plaintiff's offices. Joe Lowe's representatives told plaintiff about the new ice cream bar using the new chocolate coating and explained that the wrapper would carry the HERSHEY'S chocolate trademark. At that time, none of the wrappers or boxes to be used in marketing the product was available. Plaintiff was led to believe, however, that the use of the trademark HERSHEY'S would be similar to that in earlier trademark co-featuring arrangements of Chocolate and other products, prototypes of which were made exhibits to plaintiff's affidavits. These samples show the HERSHEY'S chocolate trademark co-featured with the trademark of the product of which HERSHEY'S chocolate product is a part. The arrangement clearly conveys this fact on first impression. Plaintiff was told that the packaging materials would be available for inspection at the Dairy Show to be held in Atlantic City later that month.

On October 24, 1966, plaintiff's president and assistant vice president and sales manager attended the Dairy and Food Exposition in Atlantic City, New Jersey. There, they visited the Joe Lowe booth and inspected the posters and cartons relating to defendants' licensing program. Plaintiff's president informed defendant Joe Lowe's representatives that he was upset and disturbed by the design and use of packaging for ice cream products highlighting, contrary to the prototypes referred to above, the name HERSHEY'S in the overemphasized manner he had seen.

Several days before the show, on October 21, 1966, plaintiff's president had read stories in the Wall Street Journal and the Journal of Commerce about the proposed licensing campaign. On that day, plaintiff notified Chocolate, Consolidated and Joe Lowe that the proposed use of the HERSHEY'S name as reported in the papers would infringe the trademark rights of plaintiff. On October 24, plaintiff's general counsel sent a letter of protest to defendants. The next day plaintiff sent copies of a notice of its trademark registration to various newspapers for publication. This notice appeared in New York and Philadelphia newspapers on October 28. On October 26, plaintiff issued a news release stating its position as to its exclusive right to use the name HERSHEY'S in marketing ice cream products and of its intention to prevent others from using the mark on such products. The release was the basis of New York and Harrisburg news stories on October 28, 1966.

The packaging complained of in this litigation comprises cartons in which chocolate coated ice cream bars are carried and sold from freezer cabinets in markets. Plaintiff's product, 10 ice cream bars in a box, bears the trademark HERSHEY'S prominently in blue block letters on a white box. The trademark appears similarly on the faces, side panels, and end panels of the box.*

* See Exhibit "A", on page 51.

Defendants' boxes bear the name "BORDEN'S", "CARNATION", "CHEERIO", or other ice cream manufacturers' trademark in red or blue prominent lettering on a white background on their faces. The same name also appears on the end panels and side panels in a conspicuous position. However, on the faces of these boxes in large prominent letters, covering most of the bottom half of the faces of the boxes, appears the familiar HERSHEY'S trademark in distinctive silver letters on a maroon background. The HERSHEY'S name is larger than that of the ice cream manufacturer. On first impression, the HERSHEY'S trademark looks like the familiar chocolate bar wrapper incorporated on to the box. The maroon band, however, also contains the legend "Chocolate Coating" (on the vanilla flavored ice cream bars) and "Light Chocolate Flavored Coating" (on the chocolate flavored ice cream bars) in smaller, relatively inconspicuous, silver letters. Above the familiar HERSHEY'S trademark in silver letters on the maroon background on the boxes (containing both chocolate and vanilla ice cream bars) there appears the legend: "6 Ice Cream Bars Coated With" or "6 CHOCOLATE Ice Cream Bars Coated With". The legend is in red and green on one of the boxes containing the chocolate ice cream bars and in blue and red on one of the boxes containing the vanilla ice cream bars. Again, these legends are in smaller less conspicuous letters than the word HERSHEY'S or the name of the manufacturer. On the side panels and end panels of the boxes, the legend "Coated With" and "Chocolate Coating" or "Light Chocolate Flavored Coating" appears in letters smaller than HERSHEY'S, in silver, within the familiar maroon coloring. When one examines the maroon band on the end and side panels of defendants' boxes, these explanatory legends do not go unnoticed.*

Plaintiff's markets are in 10 northeastern states, though largely in Pennsylvania and the adjoining area with limited distribution in several other states. Plaintiff's 6000 retail dealers are reached through 12 company branches and 6 independent distributors. About 80% of the retail dealers are "Mom and Pop" stores, namely small family owned stores, to which plaintiff supplies a freezer and signs in exchange for an agreement to carry plaintiff's full line of ice cream products and no other manufacturer's ice cream. Plaintiff has had some success in its recent sales efforts to penetrate the "supermarket" business. It hopes to continue expansion into that field. Presently, plaintiff's products are sold in the Grand Union chain (comprising about 300 supermarkets) and the Saveway chain (comprising less than two dozen stores in the Albany, New York, area and its environs). Plaintiff's ice cream bars sell in boxes of 10 with a retail price of about $.59 per box.

Defendants' ice cream bars will be sold nationally through its 77 licensees (this is the number as of January 30, 1967) with over 100 manufacturing plants and several hundred distribution plants. Defendants' ice cream bars will be sold in boxes of six with a retail price suggested of not less than $.10 each, and a wholesale price of not less than $.90 per dozen. Defendants claim their bars will be sold largely in supermarkets.

The gravamen of plaintiff's claim is that there is likely to be confusion between its product and defendants' new product. Defendants dispute this claim. Defendants contend that the arrangement between them and their licensees is the usual and accepted cofeaturing of well-known trademarks. Most of the samples of such cofeaturing attached to defendants' affidavits and briefs do not

* See Exhibit "B", on page 53.

EXHIBIT "B"

support this contention.* With respect to this contention, it appears that plaintiff may be entitled to an injunction limiting the size of the HERSHEY'S Chocolate mark. HERSHEY'S mark, by reason of its extraordinary size, may lead to consumer confusion as to source of the entire product on first impression. However, this court finds that there is a basic question of fact as to whether there is any likelihood of confusion in the mind of the consuming public if the defendants' competing product is simultaneously marketed as presently proposed.

In the ten year period from 1955 through 1965, plaintiff's expenditures in selling, advertising, and promoting ice

* See Exhibit "C".

EXHIBIT "C"

EXHIBIT "C"

cream products under its HERSHEY'S trademark have been in excess of $14,-000,000. This expenditure has enabled plaintiff to establish good will within its marketing area. This good will is a valuable property of plaintiff.

Defendants, through joint research and development, have created a new chocolate coating for ice cream bars. Between the filing of suit and service of plaintiff's motion for preliminary injunction, Joe Lowe entered into licensing agreements for use of the HERSHEY'S trademark on ice cream bars with 77 licensees. As of February 9, 1967, Joe Lowe had shipped or would be shipping about $250,-000 worth of basic materials for the licensing program including cartons, bags and wrappers. About 3 million boxes with a retail product sales value of $2,-500,000 are included in these materials. In addition, negotiations are proceeding with other prospective licensees, it being anticipated by defendants that more ice cream manufacturers will be licensed under defendants' program. Defendants have risked their valuable good will and reputation in embarking upon their licensing campaign. If the licensing program was halted by the issuance of a preliminary injunction, defendants would be in breach of a large number of existing agreements involving millions of dollars of retail products.

There is significant dispute in the instant action as to the validity of plaintiff's 1958 trademark registration. Defendants contend that the registration was fraudulently procured and fraudulently maintained. Defendants allege that in the 1958 trademark application there were the following false representations made under oath as to material facts required by the Lanham Act: Dates of first use for goods; inclusion of butter in the recitation of goods "now in use"; inclusion of a carton for butter which was no longer being used by plaintiff, with the assertion that it was; assertion of "substantially exclusive use * * * in commerce among the several states for the five years next preceding" the filing date of the trademark application for HERSHEY'S; and assertion that no other party "has the right to use said mark in commerce". Furthermore, defendants allege that a false affidavit was filed in violation of 15 U.S.C. §§ 1058, 1065, which resulted in the maintenance of Registration 665,835 by the inclusion of butter in such affidavit.

Plaintiff admits the foregoing allegations, in substance, but claims they were innocent errors. As to the allegation that there was substantially exclusive use of the mark HERSHEY'S by plaintiff in commerce for five years next preceding the application, plaintiff says there was no error and vehemently denies that any fraud was involved. Plaintiff alleges that in all other respects, the application and affidavit were factual and accurate.

These allegations of fraud and disclaimers present difficult questions of fact. There is a significant question of fact and law as to whether plaintiff had substantially exclusive and continuous use of HERSHEY'S as a mark in commerce among the several states for the five years next preceding the date of the filing of their 1958 application. 15 U.S. C. § 1052(f). The question arises from the existence of the Hershey Ice Cream Co., Inc. in New York and its use of the name HERSHEY'S for ice cream. This usage of the name by that company and by plaintiff was the subject of litigation between those parties. Hershey Ice Cream Co., Inc. v. Hershey Creamery Corp. of New York and Hershey Creamery Company, 4 Misc.2d 812, 158 N.Y. S.2d 654 (Queens Cy.1956), aff'd, 5 A.D. 2d 890, 173 N.Y.S.2d 254 (2d Dept.1958), appeal denied, 4 N.Y.2d 677, 174 N.Y. S.2d 1025, 150 N.E.2d 774 (1958). The appeal in this matter was pending at the time that the application was filed. Other questions exist as to the use of the name HERSHEY'S by Hershey Estates in Pennsylvania and Hershey Farms in New York. Whether these names were used "in commerce" so as to negate the claim by plaintiff that it made

substantially exclusive use of the name HERSHEY'S in commerce is a mixed question of fact and law, the determination of which this court believes should not be left to conflicting affidavits submitted by the parties but to decision after a trial.

The court is also of the opinion that the question whether plaintiff is barred by laches as urged by defendants is one of fact, under the circumstances of this case, which ought to await a full trial on the merits. Plaintiff filed its motion for preliminary injunction two and one-half months after commencement of this action, i. e., on January 30, 1967. The ice cream bar business is seasonal. The peak of the business is reached in the summer months. The complaint was filed shortly after the first display of defendants' cofeatured trademark packages, i. e., November 17, 1966, the display being held on October 24, 1966.

■ A party seeking a preliminary injunction has the burden of proving his right to injunctive relief, *pendente lite*. As a part of that burden, plaintiff must establish that he is threatened with immediate irreparable injury if the injunction is not granted. Hudson Pulp & Paper Corp. v. Swanee Paper Corp., 223 F. Supp. 617, 618 (S.D.N.Y.1963); Capital City Gas Co. v. Phillips Petroleum Co., 373 F.2d 128, 131 (2d Cir. 1967). Even if this burden is met, the party seeking the preliminary injunction is not necessarily entitled to that drastic relief. The Supreme Court has said:

"The award of an interlocutory injunction by courts of equity has never been regarded as strictly a matter of right, even though irreparable injury may otherwise result to the plaintiff. * * Even in suits in which only private interests are involved the award is a matter of sound judicial discretion, in the exercise of which the court balances the conveniences of the parties and possible injuries to them according as they may be affected by the granting or withholding of the injunc-

tion." Yakus v. United States, 321 U.S. 414, 440, 64 S.Ct. 660, 674, 88 L.Ed. 834 (1944).

■■ In addition to showing the likelihood of irreparable injury, the applicant must show that it will probably succeed on the trial. Imperial Chemical Industries Ltd. v. National Distillers & Chemical Corp., 354 F.2d 459, 461 (2d Cir. 1965). This second factor, "the reasonable likelihood that plaintiff will succeed in establishing its case on the merits", "is of particular importance where, as here, there is only slight evidence on the question of irreparable injury." Kontes Glass Co. v. Lab Glass, Inc., 373 F.2d 319, 320 (3rd Cir. 1967).

■ In a trademark case, such as that involved here, the court must assess still other factors in making a determination of whether or not to issue a preliminary injunction. The court must consider: 1) the likelihood that plaintiff's mark is valid; 2) whether plaintiff's mark is worthy of protection; and 3) whether plaintiff's mark is being infringed by the defendant. W. E. Bassett Company v. Revlon, Inc., 354 F.2d 868, 871 (2d Cir. 1966).

■■ Defendants in the instant action are challenging the validity of plaintiff's registration. The grounds of the attack are that the registration was procured by the use of various false and fraudulent statements in the sworn trademark application. A trademark can be collaterally attacked in any action where the validity of the mark is properly in issue. Sylvania Electric Products v. Dura Electric Lamp Co., 247 F.2d 730, 732 (3rd Cir. 1957); Flexitized, Inc. v. National Flexitized Corporation, 335 F.2d 774, 779 (2d Cir. 1964), cert. denied, 380 U.S. 913, 85 S.Ct. 899, 13 L.Ed.2d 799 (1965). When such a challenge is made in an action involving a registered trademark, "the statutory presumption of validity simply casts the burden of proof on the one who questions the validity of the registered trademark." Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141, 143 (9th Cir. 1964). The pre-

sumption is, of course, rebuttable. Flexitized, Inc., supra.

Defendants' answering briefs and affidavits create significant doubt as to the validity of plaintiff's trademark and go toward meeting the burden of proving invalidity cast upon defendants by the statutory presumption. Plaintiff has admitted some of defendants' allegations, denied others, and explained others away. In any case, the affidavits and proofs offered on this issue are conflicting. Enough doubt exists surrounding this question for Judge Ryan to have said on denying a transfer of venue motion in the instant case:

"The principal and dominant issue in this action is the plaintiff's right to trademark registration for the mark HERSHEY'S on ice cream products. The extent of the charged infringement and the alleged damage which flowed· from it are issues which may be reached only in the event of a determination of this question favorable to plaintiff and then to be tried in accounting proceedings held after a decree finding validity and infringement of the mark by the defendant." (Endorsement, February 20, 1967).

Of course, all of the foregoing factors go into the determination whether it is likely plaintiff will prevail on the trial.

■ Plaintiff must make a substantial showing to obtain a preliminary injunction. Willpat Productions, Inc. v. Sigma III Corp., 227 F.Supp. 354, 357 (S.D.N.Y.1964). Such a showing must be made on the issue of the validity of the mark, if it is contested, Dymo Industries, Inc. v. Tapeprinter, Inc., supra; on the issue of confusion caused by the second comer by its use of its mark, Haig & Haig, Ltd. v. Maradel Products, Inc., 249 F.Supp. 575 (S.D.N.Y.1966); on the question of immediate irreparable injury which could not be adequately redressed by money damages ascertainable upon proof, Foundry Services, Inc. v. Beneflux Corp., 206 F.2d 214 (2d Cir. 1953); and on the weighing of equities

and the balancing of conveniences in its favor, Blaich v. National Football League, 212 F.Supp. 319, 322–323, (S.D. N.Y.1962). If the applicant for the injunction has not demonstrated that all of these factors are in its favor, the court, in the exercise of its discretion, may deny the granting of a preliminary injunction.

■ Plaintiff properly claims that under 15 U.S.C. § 1057(b) its Registration No. 665,835 of August 12, 1958 for its HERSHEY'S trademark in the ice cream field is prima facie evidence of the mark's validity. Another provision of the statute, 15 U.S.C. § 1119, declares that in any action involving a registered mark, the court may determine the right to registration.

■ In the instant case, this court finds that there are existing doubtful questions of law and fact relating to the registration and validity of plaintiff's trademark.

■ On applications for preliminary injunctions the court is not bound to decide doubtful and difficult questions of law or disputed questions . of fact. Dymo, supra, 326 F.2d at p. 143. It has even been said that, "Even should the court feel, from examination of the papers now before it on this motion, that plaintiff will ultimately prevail after trial of these issues, the ° fact that his right at this stage is clearly not beyond dispute is sufficient to deny the injunction pendente lite." Huber Baker Co. v. Stroehmann Bros. Co., 114 F.Supp. 411, 413 (S.D.N.Y.1953), aff'd, 208 F.2d 464 (2d Cir. 1953). "Where the bill and answer in a suit present debatable questions, it is within the discretion of the court to refuse to grant a preliminary injunction on affidavits." Decorative Stone Co. v. Building Trades Council of Westchester County, 13 F.2d 123, (2d Cir. 1926); General Electric Co. v. American Wholesale Co., 235 F.2d 606, 608 (7 Cir. 1956); Cement Enamel Development, Inc. v. Cement Enamel of New York, Inc., 186 F.Supp. 803 (S.D.N.Y. 1960). "If witnesses are not heard the trial court will be left in the position of

preferring one piece of paper to another." Sims v. Greene, 161 F.2d 87, 88 (3rd Cir. 1947).

Here the affidavits are clearly conflicting as to the factual background of statements contained in the trademark application filed by plaintiff. The equities of the bill and the countercharges of unclean hands are claimed and denied fully and explicitly under oath. This court is of the opinion that these conflicts can only be resolved by the taking of oral testimony with examination and cross-examination of witnesses. Furthermore, if the contents of the affidavits are to be accorded equal weight, as they must, then plaintiff has not made a sufficient substantial showing of its right to the drastic relief of a preliminary injunction because the validity of its trademark is in doubt.

A part of the statute involved here, 15 U.S.C. § 1114, also makes likelihood of confusion one of the bases of a cause of action under the statute. Plaintiff, in order to obtain its preliminary injunction, also must bear the burden of showing the likelihood of success of its claims of infringement and unfair competition on the trial on the merits. The Second Circuit has said, "The keystone in that portion of the law of unfair competition which relates to trademarks is the avoidance of confusion in the minds of the buying public." Safeway Stores, Inc. v. Safeway Properties, Inc., 307 F.2d 495, 497 (2d Cir. 1962). Plaintiff, at this point, has not met its burden of showing the likelihood of confusion between its mark and that of the defendants.

In most cases of this type, there is the element of market and product competition between the parties. Here, there is an admitted competition between the parties in the product field of ice cream bars. As to whether or not there is market competition between the parties, the affidavits are conflicting. The question of direct market competition is not, however, determinative. The courts have continually held that the probability of the trademark owner's natural expansion may be considered. L. E. Waterman Co. v. Gordon, 72 F.2d 272, 273 (2d Cir. 1934); W. E. Bassett Co. v. Revlon, Inc., 354 F.2d 868, 872 (2d Cir. 1966). Though these decisions have been cast in terms of expansion in product fields, it appears that the same logic applies to give protection in terms of expansion into new markets through incursions into different types of retail outlets than those customarily used by the trademark's owner.

■ Whether there is likelihood of confusion as to the source of goods is essentially a question of fact. Haig & Haig, Ltd. v. Maradel Products, Inc., supra. Factors to be considered in determining whether there is confusion are, "the degree of similarity between the trade-marks in appearance and suggestion, the strength of the plaintiff's mark, the area and manner of concurrent use, and the degree of care likely to be exercised by purchasers." Maternally Yours, Inc. v. Your Maternity Shop, Inc., 234 F.2d 538, 543 (2d Cir. 1956). Of course, the courts must be careful to consider the distinction between "a deliberate attempt to deceive and a deliberate attempt to compete." Norwich Pharmacal Co. v. Sterling Drug, Inc., 271 F.2d 569, 572 (2d Cir. 1959), cert. denied, 362 U.S. 919, 80 S.Ct. 671, 4 L.Ed.2d 739 (1960). As to all of these factors, there is dispute between the conflicting affidavits submitted by the parties.

■ For the movant to succeed, however, in his cause of action it is not essential and necessary that the parties be in actual competition with each other. In Ambassador East, Inc. v. Shelton Corners, Inc., 120 F.Supp. 551, 554 (S.D. N.Y.1954) the court said: "If one uses another's trade name, he borrows the owner's reputation and good will. 'This is an injury, even though the borrower does not tarnish [the name], or divert any sales by its use; for a reputation, like a face, is the symbol of its possessor and creator, and another can use it only

as a mask.' Yale Electric Corp. v. Robertson, 2 Cir., 1928, 26 F.2d 972, 974." A cause of action does exist for misappropriation of a property right or the commercial advantage of another. Flexitized, Inc. v. National Flexitized Corporation, supra.

Here, again, confusion is the gravamen of such a cause. Plaintiff's affidavits allege confusion in conclusory statements which are vehemently denied in defendants' affidavits. If the plaintiff is entitled to an injunction, he will get it upon a sufficient showing after a trial on the merits.

Plaintiff also alleges that it is entitled to the relief that it seeks under 15 U.S.C. § 1125(a). This section provides:

"(a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce * * * shall be liable in a civil action by any person * * * who believes that he is or is likely to be damaged by the use of any such false description or representation."

Plaintiff has alleged that the defendants' packaging gives a false representation as to the source of the ice cream bars contained in the boxes. It is contended that the public will believe that either defendant Chocolate or plaintiff is the producer of the ice cream contained in the box. Again, on this issue, the affidavits are conflicting and this court believes that this issue must be left for trial.

To obtain a preliminary injunction, the applicant must demonstrate that without it, he would suffer irreparable injury. Foundry Services, Inc. v.

Beneflux Corp., supra. The plaintiff, here, cannot succeed in meeting its burden of proof by mere assertions of irreparable injury without a showing of prima facie supporting evidentiary facts. Nadya, Inc. v. Majestic Metal Specialties, Inc., 127 F.Supp. 467 (S.D.N.Y. 1954); Hudson Pulp & Paper Corp. v. Swanee Paper Corp., supra. "The issuance of an injunction is not justified by the mere fact that irreparable harm may possibly ensue if restraint is not imposed. The plaintiff must make out a case for the issuance of the injunction by demonstrating that there is a clear present need for it. Injunctions will not be issued merely to allay the fears and apprehensions or to soothe the anxieties of the parties (footnotes omitted)." Standard Brands, Inc. v. Zumpe, 264 F.Supp. 254, 267–268 (E.D.La.1967). In addition, in considering the factor of irreparable loss, the loss that defendants would sustain, if the injunction was granted, must be considered. Yakus v. United States, supra.

Plaintiff has made no factual statement of loss of sales or of circumstances of sales lost, other than to speculate about how its business would be damaged if it was forced to compete with defendants and that this loss would be immediate and irreparable. On the other hand, defendants have set forth in detail the considerable financial loss and loss of goodwill that would be incurred by them if the injunction was granted. Furthermore, defendants have set forth in detail facts evidencing their financial ability to respond in money damages for any loss suffered by plaintiff if plaintiff succeeds on the merits of this action. Moreover, because of the seasonal nature of the business involved here, of which factor this court takes judicial notice, delay in the availability of the defendants product to the market if they finally prevail on the merits will result in probable irreparable harm to defendants.

The motion is denied.