**CARIBBEAN ATLANTIC AIRLINES, INC., Plaintiff,**

v.

**INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO, Juan Maldonado, Local No. 2201, International Association of Machinists and Aerospace Workers, AFL–CIO, Jose Cay, Miguel Ortiz, Pedro J. Del Manzano, Jose. A. Dones, Miguel Morales, Jose A. Velez, Rafael Cantri and Phil Matos, Defendants.**

Civ. A. No. 839–67.

United States District Court
D. Puerto Rico.

April 15, 1968.

Juan R. Torruella, Hato Rey, P. R., for plaintiff.

Leonardo Llequis, Santurce, P. R., for defendants.

## ORDER AND MEMORANDUM DECISION

FERNANDEZ-BADILLO, District Judge.

This cause came to be heard upon a verified complaint requesting issuance of a temporary restraining order, thereafter a preliminary injunction, and ultimately a permanent injunction.

Plaintiff, an airline, claims that defendants, its employees in the class which includes servicemen, mechanics, carpenters, painters and related classifications, acting in concert, unlawfully threatened to engage in a strike and other disruptive activities against plaintiff if certain required maintenance, repairs and overhaul of its aircraft known as Convair 340 and 640 Darts were performed at Miami, Florida, outside the plaintiff's facilities in Puerto Rico.

Plaintiff sought relief from this Court under Title 28 U.S.C. §§ 1331 and 1337, and it relies on the Railway Labor Act, Title 45 U.S.C. §§ 151 through 188. No temporary restraining order having been issued, an order to show cause why a preliminary injunction should not issue was entered on December 18, 1967 and the same was heard on December 21st and 22nd, 1967.

At the hearing defendants denied the existence of any threat of strike and raised the following two points:

1. The case involved a labor dispute between plaintiff and defendants, and since the Norris-La Guardia Act, Title 29 U.S.C. § 101 et seq., forbids any Federal Court to grant an injunction when there is a matter of labor dispute involved, the Court was without jurisdiction to grant the remedy of injunction sought for by the petitioners.

2. The matter is not mature, because the contract signed between the parties provides a grievance procedure to settle the matter, and plaintiffs have not exhausted the remedies provided in the contract. (Record, p. 4)

Testimony and documentary evidence was produced for both sides, and the Court, being duly advised, makes the following:

## FINDINGS OF FACT

1. Plaintiff, the Caribbean Atlantic Airlines, Inc., which will hereafter be referred to as CARIBAIR, is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with principal office at International Airport, Isla Verde, Puerto Rico and is a common carrier by air engaged in interstate commerce.

2. Defendant, International Association of Machinists and Aerospace Workers, AFL-CIO, which will hereafter be referred to as I.A.M., is a labor union with its principal office and headquarters located in Washington, D. C.

3. Defendant, Local 2201, is a local union of defendant I.A.M. and has at all material times been the duly designated

representative of plaintiff's employees in certain crafts or classes, including servicemen, mechanics, carpenters, painters and others.

4. Defendant Juan Maldonado is an international officer representing I.A.M. in Puerto Rico.

5. José Cay, Miguel Ortiz, Pedro J. del Manzano, José A. Dones, Miguel Morales, José A. Vélez, Rafael Cantri and Phil Matos are officers and/or representatives of defendant Local 2201 and are truly representatives of the membership of said defendant local.

6. There is now in effect a collective bargaining agreement, entered into in accordance with the provisions of the Railway Labor Act, between plaintiff and defendant union as the exclusive bargaining agent of certain, but not all, of plaintiff's employees, which agreement governs rates of pay, rules and working conditions, and provides a method of handling disputes growing out of grievances or out of the interpretation or application of any of the provisions of said agreement.

7. Under section 24 of said agreement (Exhibit 1, for plaintiff, p. 33) a grievance procedure has been established whereby disputes and grievances are first presented to the employees' immediate supervisor, then to the higher ranking supervisor and then to the chief operating officer.

8. The collective bargaining agreement establishes a System Board of Adjustment mentioned in said section 24. The Board, established in compliance with Section 204, Title II of the Railway Labor Act, is implemented by a written agreement between the parties entered into on October 2nd, 1951 (Exhibit 2, for plaintiff, p. 32) and amended on November 13, 1966 (Exhibit 3, for plaintiff, p. 25). The Board has jurisdiction to decide all disputes growing out of grievances or out of the interpretation or application of the collective bargaining agreement between plaintiff and I.A.M. which have not been settled in the steps or levels up to and including the chief operating officer. Section 24 provides waiving by agreement of intermediate steps, and grievances processed to the next higher step.

9. The decisions of the Board in all cases properly referable to it are final and binding upon the parties.

10. By reason of the rules and regulations of the Federal Aviation Administration, plaintiff is required to carry out certain maintenance, repairs and overhaul of its aircraft. In order to comply with the above mentioned regulations the first airplane was scheduled to be overhauled in the facilities of Eastern Airlines, Inc. at Miami, Florida on January 1, 1968.

11. The grievance in this case involves the overhaul of aircraft to be performed outside the company's facilities in Puerto Rico. The company contends that because of the facilities, equipment and personnel required it is impeded from carrying out said overhaul in its facilities in Puerto Rico. The union's position is that the existing agreement does not cover overhaul work done outside Puerto Rico.

12. Section 9, the scope clause of the collective bargaining agreement, provides as follows:

"The Company agrees all work generally recognized as mechanical inspection work, mechanic's work, conversion of aircrafts, plant maintenance work and equipment service work performed in and about Company shops, maintenance bases, overhaul bases, line service stations and other Company facilities, including but not limited to mechanical work involved in dismantling, overhauling, repairing, fabricating, assembling, welding and erecting all parts of airplanes, aircraft engines, electrical systems, heating systems, link and/or flight simulator, ground radio equipment, (except that currently performed by ARINC) and machine tool work in connection therewith and including the dismantling, repairing, assembling and erecting of all machinery and mechanical devices

and automotive and building maintenance and repair work is recognized as coming within the jurisdiction of the International Association of Machinists and Aerospace Workers and is covered by this Agreement." (Exhibit 1, for plaintiff, p. 17.)

13. It is an undisputed fact that both parties are willing to submit the grievance in this case to arbitration.

14. Steps, at least informal, have been already taken toward the solution of the controversy; both parties have met several times and discussed negotiations over the matter; however, it was not established by the evidence that the grievance procedures provided for in § 24 of the agreement between the plaintiff and defendant union have been observed. (Record, pages 34-37)

15. Plaintiff did not prove that defendant union and its members have threatened to go on strike against plaintiff if the required overhaul of aircraft is performed in Miami, Florida.

16. Harry D. Bickford, plaintiff's principal witness, offered contradictory testimony as to the threat of a strike. (Record, pp. 46 and 93) His testimony with reference to the alleged strike vote taken by union members is a conclusion based on rumors, purely hearsay, and does not deserve the Court's credibility.[1]

17. The Constitution of the I.A.M., Article XVIII, establishes a method of declaring a strike. (Exhibit D, for defendants, pp. 53-54) This method has not been complied with by the members of defendant union simply because no strike vote was taken by them at the meeting of November 11, 1967 at Juan Maldonado's home. Several mechanics, whose testimony stands uncontradicted, testified that no strike vote was taken at said meeting where only aproximately 40 of the 125 mechanics involved were

---

1. "Q. I ask you if you know if they had any meetings where they proposed to go on strike, I mean the local union or those officers.
A. * * * The meeting was posted on the bulletin board to be held at the home of Mr. Maldonado to discuss the block overhaul.
Q. What question?
A. The problem of farming out the block overhauls. Such meeting, to the best of my knowledge and belief, was held and the members present there voted to go on strike.
Q. How do you know?
A. Because a number of mechanics told me that the people who were present voted to go on strike.
Q. A number of mechanics told you so?
A. Several.
Q. Please tell me the name of those mechanics.
A. I cannot tell you the names of those mechanics.
Q. Why?
A. I don't know all my mechanics by name.
Q. Just tell me those you know by name then.
A. One of the people who told me this was one of our supervisors. He was not at the meeting.
Q. So he told you that one of the mechanics told him.
A. No.
Q. I am sorry.
A. I—one of those who told me that I know well enough to know his name was one of my supervisors, one of the maintenance supervisors and that is Hiram Maldonado.
Q. When Hiram Maldonado told you that, he belongs to the union?
A. At the present time, no, he is a supervisor.
Q. At the time he told you that?
A. No, he is a supervisor.
Q. Did you investigate how Hiram Maldonado knew that fact?
A. No, I did not.
Q. You just listened to him and believed what he told you?
A. Yes, Sir.
Q. You didn't make any further investigation on that?
A. I interrogated a number of the mechanics, some of whom ·answered nothing, and one or two said yes, that's correct.
Q. The name of those who answered you yes?
A. I told you I don't know the names of my mechanics.
Q. None of them?
A. A few of them. * * *" (Record, pp. 95 through 98)

present. The Court has given credit to these testimonies over those of plaintiff's witnesses based on mere rumors as to this fact.

Based upon the foregoing, the Court hereby makes the following:

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action under the United States Code, Title 28, §§ 1331 and 1337.

■ 2. Since the jurisdiction of this Court has been challenged with the prohibitions of the Norris-La Guardia Act, 29 U.S.C., section 101 et seq., on injunctions in labor disputes, the Court has to pass first upon this point. The plaintiff is an interstate common carrier by air subject to the Railway Labor Act, 45 U.S.C., §§ 151–188. It has been well settled that the Norris-La Guardia Act does not apply to any action for preliminary or permanent injunction or restraining order against strikes in violation of provisions of the Railway Labor Act. Brotherhood of Railroad Trainmen v. Chicago River and Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L. Ed.2d 622 (1957); Bangor & Aroostock R. Co. v. Brotherhood of Locomotive Firemen and Enginemen, D.C.D.C.1966, 253 F.Supp. 682. To decide this point it is important to consider the question of whether the labor dispute is minor or major. As pointed out in Elgin, Joliet and Eastern R. Co. v. Burley, 325 U.S. 711, 722–728, 65 S.Ct. 1282, 89 L.Ed. 1886 (1945), substantial differences in procedures exist in the handling of major or minor disputes. Major disputes are to be settled only by processes of non-compulsory adjustment through mediation and conciliation. Major disputes result when there is disagreement in the bargaining process for a new contract, while a minor dispute arises over the interpretation of an existing collective bargaining agreement in a particular fact situation. International Association of Machinists, etc. v. Northwest Airlines (8th Cir. 1962) 304 F.2d 206, 209–210.

■ The questions raised by the dispute in this case involve the interpretation of the existing collective bargaining agreement, specially section 9, and the claims are to contractual rights accrued thereunder rather than to have new ones created for the future. This case, therefore, involves a minor dispute which should be processed pursuant to the grievance procedures established in the collective bargaining agreement between plaintiff and I.A.M. under the provisions of the Railway Labor Act, Title 45 U.S.C. § 184, specifically, and the Norris-La Guardia Act does not necessarily bar the exercise of jurisdiction by this Court.

■ 3. Nevertheless, a preliminary injunction should not be granted in a doubtful case. Freeport Sulphur Company v. United States, 199 F.Supp. 913 (D.C.1961); Hershey Creamery Co. v. Hershey Chocolate Corp., 269 F.Supp. 45 (D.C.1967); Dymo Industries, Inc. v. Tapeprinter, Inc., 326 F.2d 141 (9 Cir. 1964); Cement Enamel Development, Inc. v. Cement Enamel of N. Y., 186 F. Supp. 803 (D.C.1960). In order to obtain an injunction, plaintiff must present facts sufficient to show a necessity for and a clear right to such relief. Clark v. Thompson, 206 F.Supp. 539 (D.C.1962), affirmed 313 F.2d 637 (5 Cir.), certiorari denied, 375 U.S. 951, 84 S.Ct. 440, 11 L.Ed.2d 312; Congress of Racial Equality v. Douglas, 318 F.2d 95 (5 Cir. 1963), certiorari denied Burt v. Congress of Racial Equality, 375 U.S. 829, 84 S.Ct. 73, 11 L.Ed.2d 61; Societe Comptoir De L'indus. v. Alexander's Dept. Stores, 190 F.Supp. 594 (D.C. 1961), affirmed 299 F.2d 33, 1 A.L.R.3d 752 (2 Cir.).

■ 4. Petitioner has not established the threat of a strike by a preponderance of the evidence.

■ 5. Moreover, the parties must proceed to exhaust the administrative remedies, already begun informally in conferences, up to the exercise of the adjustment functions vested by § 184, 45 U.S.C., in system, group or regional boards of adjustment. The Railway Labor Act contemplates compulsory arbitra-

tion of minor disputes. International Association of Machinists, etc. v. Northwest Airlines, supra.

6. Plaintiff is not entitled to a preliminary injunction against defendants to restrain them from threatening to strike.

The petition is denied and it is hereby so ordered.