The **AIRLINES STEWARDS AND STEWARDESSES ASSOCIATION, LOCAL 550, TRANSPORT WORKERS UNION OF AMERICA, AFL–CIO, Plaintiff,**

v.

**CARIBBEAN ATLANTIC AIRLINES, INC., Defendant.**

**Civ. No. 585–68.**

United States District Court
D. San Juan, P. R.

Sept. 23, 1968.

---

Francisco Aponte Perez, San Juan, P. R., for plaintiff.

J. R. Torruella Del Valle, San Juan, P. R., for defendant.

### DECISION AND ORDER

HIRAM R. CANCIO, Chief Judge.

This cause came to be heard upon a verified complaint requesting the issuance of a temporary restraining order,

thereafter a preliminary injunction, and finally a permanent injunction.

Plaintiff, a labor organization, claims that defendant on or about September 9, 1968 unilaterally changed the open time scheduling provisions of the existing collective bargaining agreement by assigning flights, rather than offering them, on the basis of seniority.

Plaintiff sought relief from this Court under Title 28 U.S.C. Section 1337, and under the Railway Labor Act, Title 45 U.S.C. Sections 151 through 188.

A temporary restraining order was issued by the Court on September 11, 1968, and a hearing was to be held on September 20, 1968. The order enjoined and restrained defendant from changing the manner and method of scheduling the "open time" flights as was in existence prior to September 9, 1968.

Defendant filed an Answer to the Complaint and a Motion for Dissolution of Temporary Restraining Order. The hearing on this motion and the hearing scheduled originally for September 22, 1968 was advanced and held on September 16, 1968.

Defendant raised in its motion for dissolution of the temporary restraining order technical and jurisdictional defenses. The technical defenses include that the complaint was not verified, that it shows no facts to establish immediate and irreparable injury, and that the plaintiff's certification does not show valid grounds for not giving notice to defendant. The jurisdictional issues are as follows:

1. The Court lacks jurisdiction over the subject matter under the provisions of the Norris La Guardia Act, 29 U.S.C. Sections 101–115.

2. The temporary restraining order causes a change in the present operations of the defendant since defendant's operations have not changed since or before September 9, 1968.

3. The grievance and arbitration procedures of the collective bargaining agreement provide an adequate remedy for the actions complained of by plaintiff.

4. The defendant is willing to submit the merits of the controversy to arbitration, and damages, if any, can be subject to monetary calculations.

5. The issuance of the temporary restraining order causes irreparable damages to defendant.

Testimonial and documentary evidence was produced for both sides, and the Court, being duly advised, makes the following:

## FINDINGS OF FACT

1. Plaintiff is a labor organization and local Union of the Transport Workers of America, AFL–CIO, and represents the Stewardesses employed by defendant, with its principal office located in Chicago, Illinois.

2. Defendant, commonly referred to as CARIBAIR, is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico with its principal office at the Internationl Airport, Isla Verde, Puerto Rico, and is a common carrier by air engaged in interstate commerce.

3. A collective bargaining agreement is now in effect between plaintiff and defendant, entered into in accordance with the provisions of the Railway Labor Act, which agreement governs, among other items, rates of pay, rules and working conditions. Plaintiff's Exhibit A.

4. The collective bargaining agreement incorporates a Flight Stewardesses Scheduling Policy Manual which provides for the method and manner for scheduling open time flights. "Open time" is defined in paragraph G of said Manual as "all flying which is not included in a bid run." "Bid run" is defined in Section 2(f) of the contract as "a monthly assignment of flying." Paragraph G of the Manual provides that "open time shall be offered in order of seniority to Flight Stewardesses," and by virtue of paragraph 4G of said Manual, "open time shall be offered to stand-by in order of

seniority. Such open time flights shall be offered and posted on the daily schedule at least thirty (30) minutes before the schedule departure of the flight." The term "stand-by duty" is defined in Section 2(i) to mean "the time during which the Company requires a flight stewardess to be available at the airport. Such stand-by duty will commence and end at the times designated by the Company."

5. The Introduction to the Flight Stewardess Scheduling Policy Manual provides as follows: "Changes may be made with the mutual consent of ALSSA and the Company. The purpose is to provide a systematic and equitable method of scheduling Flight Stewardesses." Section 26(J) of the contract reads:

> The Stewardess Scheduling Manual shall be considered part of this Agreement. Changes or amendments may be made to the Stewardess Scheduling Manual at any time by written mutual agreement between the Airline Stewards and Stewardesses Association and the Company designated representative."

6. Prior to September 1, 1968, the practice and procedure observed and followed by defendant in scheduling open time was to offer it to Stewardesses on stand-by duty on an individual flight basis according to seniority, and not on a group or package basis, and at least thirty minutes prior to departure of the flight. This practice followed and was in conformity with the contract and the manual. Starting on September 1, 1968, defendant changed that practice and procedure by assigning, rather than offering, open time on a group or package basis instead of on an individual basis. The end result was that a senior girl was unable to take individual flights if she refused to take the whole pattern of flights, as was the practice prevailing before September 1, 1968. This practice of take it' or leave it basis affected adversely the voluntary and optional choice that the stewardesses had to select individual flights at least 30 minutes before the departure of the flight.

7. On September 3, 1968, the Chairman and Vice-Chairman of the plaintiff's Local requested a meeting with Mr. Harry D. Bickford, Vice-President of Operations of defendant, to discuss the above indicated change. Mr. Bickford took the position that no change had been introduced to the open time scheduling policy. The Local's union representatives contacted the plaintiff's union headquarters in Chicago, and Mr. Frederick A. Simpson, a Vice-President, was sent to Puerto Rico to discuss the matter. The defendant held in abeyance the instituted changes until the parties discussed and negotiated the changed flying schedules. The negotiations produced no results and the defendant went ahead with the changes, making them permanently effective on September 9, 1968, as outlined in a memorandum circulated to the employees, which is contained in plaintiff's Exhibit 2. As a result of the change, and subsequent to September 9, 1968, several senior stewardesses who refused to take the whole series of open flights were prevented and unable to take individual open flights within the package and within thirty (30) minutes before departure of flight, since the defendant proceeded to assign the whole series of flights to less senior or junior stewardesses.

8. Both parties are willing to submit the issue to arbitration. However, the plaintiff insisted that the Company had to keep the status quo as existed before September 9, 1968, and defendant requested that the plaintiff had to file a prior grievance under the contract.

9. The collective bargaining agreement, under section 20 (Exhibit 1 for the plaintiff, pages 24–28) establishes an investigatory and hearing procedure in disciplinary cases with the right to appeal to the Director of Operations and to the System Board of Adjustment. Section 21 of said contract (Exhibit 1 for the plaintiff, page 28) extends the same right of investigation, hearing and appeal to any flight stewardess or group of flight stewardesses who have a grievance concerning any action of the com-

pany affecting them. The System Board of Adjustment created under the contract (plaintiff's Exhibit 1, pages 47–54) states:

The Board shall have jurisdiction over disputes between any employee covered by the FST Agreement and the Company, growing out of grievance or out of interpretation or application of any of the terms of the Agreement. The jurisdiction of the Board shall not extend to proposed changes in hours of employment, rates of compensation, or working conditions covered by existing agreements.

10. The Court finds that the complaint was verified before a clerk of this Court by Mr. Frederick A. Simpson, a duly authorized representative of both the local and international union to sign necessary documents and papers in their behalf. It is also found that the complaint states and shows sufficient facts to establish the immediate and irreparable injury and damage to plaintiff before defendant was heard in opposition. Finally, the attorneys' certification shows valid grounds for not giving notice to defendant.

Based upon the above findings of facts, the Court hereby makes the following

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this action under the United States Code, Title 28, sections 1331 and 1337.

■■ 2. The Court has jurisdiction over the subject matter of this controversy under the provisions of the Railway Labor Act, 45 U.S.C. Sections 151–188. The defendant's challenge to the jurisdiction of the Court due to the prohibitions of the Norris La Guardia Act, 29 U.S.C. Section 101, et seq., is without merit. Under said Act, the presence of a labor dispute brings into full play the proscriptions of injunctions against strikes contained in Section 4(a) of the Statute. But here we are not concerned, nor has it been alleged, that there is present a strike or threat of a strike to command the intervention of the Norris La Guardia Act. Besides, it is well settled that the Norris La Guardia Act has no application in an action for preliminary or permanent injunction against strikes or concerted activities in violation of the statutory scheme of the Railway Labor Act. Brotherhood of Railroad Trainmen v. Chicago River and Indiana R. Co., 353 U.S. 30, 77 S.Ct. 635, 1 L.Ed.2d 622 (1957); Bangor & Aroostock R. Co. v. Brotherhood of Locomotive Firemen & Enginemen, 253 F.Supp. 682, D.C.D.C. (1966); Brotherhood of Locomotive Engineers et al. v. Louisville & Nashville RR Co., 373 U.S. 33, 83 S.Ct. 1059, 10 L.Ed.2d 172 (1963); Caribbean Atlantic Airlines, Inc. v. International Association of Machinists et al., 283 F.Supp. 601, D.C.D.P.R., (1968); cf. Sinclair Refining Co. v. Atkinson et al., 370 U.S. 195, 82 S.Ct. 1328, 8 L.Ed.2d 440 (1962).

■■ 3. The policy and basic philosophy of the Railway Labor Act is to give full force to the process of collective bargaining for the orderly instrumentation of changes in rates of pay, rules or working conditions as embodied in agreements between the parties. The Act fixes a procedure for notice and bargaining on the subject of such proposed changes. It also imposes upon the carrier the duty to refrain from altering the rates of pay, rules or working conditions until the controversy has been finally resolved through the procedures established in the Act. See Section 2(7) and Section 6 of the Act.

■ 4. The existing collective bargaining agreement between the parties embodies and incorporates the same policy of mutual bargaining, consent, and the maintenance of the status quo regarding changes in the subject matter of rates of pay, rules or working conditions. The introduction of the Flight Stewardesses Scheduling Policy Manual commands that changes to said Manual are to be made only with the mutual consent of the parties. The same policy is reiterated and reinforced in Section 26 (j) of the contract, providing that any changes or amendments to the Steward-

esses Scheduling Policy Manual may be made at any time with the mutual written agreement of the parties. And by virtue of Section (e) of the System Board of Adjustment, its jurisdiction is restricted from extending to proposed changes in hours of employment, rates of compensation or working conditions covered by the existing agreement.

5. The change introduced by the defendant in scheduling open time flights effective September 9, 1968 constituted a radical departure from the policy outlined in the Flight Stewardesses Scheduling Policy Manual in that it demanded prior compliance with the contractual requirements of negotiation and agreement. The change introduced by the defendant amounts to a change or an amendment to said Manual without the contract requirements of mutual written agreement of Section 26(j) of the contract and the element of the mutual consent of the Introduction to the Manual.

6. Plaintiff prays for injunctive relief ordering the carrier to maintain the *status quo ante* regarding the open time flights until the observance of the contractual or legal requirements of bargaining, negotiation and agreement. The Court concludes that it has jurisdiction to issue such injunctive relief to protect the integrity of the existing agreement and to provide for the orderly resolution of changes and amendments in working conditions through the process of bargaining and negotiation and, if this fails, through the procedures established in the Act and in the contract. The authority of the district courts to provide for the restoration of status quo situations have been upheld and sustained as inherent to the equitable powers of the court, if based on an informed and reasonable discretion. Brotherhood of Locomotive Engineers et al. v. Missouri-Kansas-Texas RR. Co., 363 U.S. 528, 80 S.Ct. 1326, 4 L.Ed.2d 1379 (1960); Westchester Lodge 2186, etc. v. Railway Express Agency, Inc., 2 Cir., 329 F.2d 748 (1964); Railroad Yardmasters of Amer-

ica v. St. Louis-San Francisco RR. Co., D.C., 231 F.Supp. 986, 987. See Jack L. Kroner, Interim Injunctive Relief Under the Railway Labor Act: Some Problems and Suggestions, 18 N.Y.U. Conference on Labor, 179.

7. The Court concludes that the controversy in the present case involves a violation of the duty to bargain over changes or amendments to existing working conditions and is not a grievance subject to the grievance procedure of the contract requiring prior exhaustion of contractual remedies.

8. Plaintiff complied with the legal requirements of the Rules of Civil Procedure concerning verification of the complaint, the showing of facts to establish irreparable injury, and the attorney's certification.

9. In view of the representations of both parties to submit the present controversy to arbitration, the parties are directed to expedite the resolution of the dispute by all available means and remedies, both legal and contractual.

10. Plaintiff is entitled to a preliminary injunction restraining and enjoining the defendant, its officers, agents, representatives, attorneys or any other person acting in its representative and official capacity, or its legal successors, from changing the manner of scheduling open time flights. The method of scheduling shall be on the basis of seniority, as outlined in the contract, each flight or trip to be offered on an individual flight basis at least thirty (30) minutes before departure of the individual flight or trip. The Defendant shall not offer or assign open time flights on a group or package basis.

10– This preliminary injunction shall remain in force and effect until the final disposition of this cause, and the bond previously filed herein shall also continue in effect.

The petition is hereby granted and it is so ordered.